**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., and ASF-K DE MEXICO S. DE R.I. DE C.V., ) ) ) Plaintiffs, ) ) v. ) ) U.S. DEPARTMENT OF COMMERCE, U.S. SECRETARY OF COMMERCE GINA M. RAIMONDO, in her official capacity, and UNITED STATES, ) ) ) ) ) ) Defendants, ) ) and ) ) COALITION OF FREIGHT RAIL PRODUCERS, ) ) ) Defendant-Intervenor. ) | Court No. 22-00316 PUBLIC VERSION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Assistant Director
EMMA E. BOND
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Email: Emma.E.Bond@usdoj.gov

OF COUNSEL:

BRISHAILAH BROWN
Attorney
Office of the Chief Counsel for Trade
Enforcement & Compliance
U.S. Department of Commerce

November 10, 2022

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION................................................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY...................................................................... 3

I.      The Prior Investigations Into Freight Rail Coupler Systems From China ....................... 3

II.     Current Investigations Into Freight Rail Coupler Systems From China And Mexico ....... 5

III.    Plaintiffs File Applications For Injunctive Relief In This Court..................................... 8

QUESTION PRESENTED .................................................................................................... 9

ARGUMENT....................................................................................................................... 10

I.      Standard Of Review For Granting Injunctive Relief................................................... 10

II.     Plaintiffs' Request For Preliminary Injunctive Relief Should Be Denied As Moot
        Because The Court Does Not Possess Jurisdiction Pursuant to 28 U.S.C. § 1581(i)....... 11

III.    Plaintiffs Fail To Prove That They Are Likely To Succeed On The Merits .................. 12

        A.      Commerce Reasonably Declined To Disqualify The Attorney Or The Firm At
                This Time .................................................................................................... 13

        B.      Commerce Reasonably Applied Its Procedures For Alleged Violations Of Its
                Administrative Protective Order ..................................................................... 18

IV.     Plaintiffs Have Failed To Demonstrate Immediate, Irreparable Harm.......................... 22

V.      The Balance Of Hardships And Public Interest Favor Denial ...................................... 24

VI.     USCIT Rule 65(c) Security Is Required ..................................................................... 26

CONCLUSION.................................................................................................................... 26

## TABLE OF AUTHORITIES

### Cases

*A Classic Time v. United States*,
   123 F.3d 1475 (Fed. Cir. 1997)................................................................20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343, 1350 (Fed. Cir. 2001) ......................................................11

*Am. Ass'n of Exps. & Imps.–Textile & Apparel Grp. v. United States*,
   751 F.2d 1239 (Fed. Cir. 1985)................................................................20

*Am. Inst. for Imported Steel, Inc. v. United States*,
   8 CIT 314 (1984)......................................................................................11

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006)..................................................................................12

*Asociacion Colombiana de Exportadores de Flores v. United States*,
   13 CIT 584 (1989)....................................................................................22

*Axiom Res. Mgmt., Inc. v. United States*,
   564 F.3d 1374 (Fed. Cir. 2009)................................................................11

*Bd. of Regents of State Colls. v. Roth*,
   408 U.S. 564 (1972)..................................................................................20

*Bebitz v. United States*,
   433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) ...........................................16

*Carpenter v. United States*,
   484 U.S. 19 (1987)....................................................................................20

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532, 538 (1985)..........................................................................21

*Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*,
   501 F.2d 917 (3d Cir. 1974) .....................................................................24

*FCC v. Schreiber*,
   381 U.S. 279 (1965)............................................................................13, 17

*Firestone Tire & Rubber Co. v. Risjord*,
   449 U.S. 368 (1981)......................................................................17, 22, 23

*Freeman v. Chi. Musical Instrument Co.*,
    689 F.2d 715 (7th Cir. 1982) ............................................................... 15

*Galderma Lab'ys, L.P. v. Actavis Mid Atl. LLC*,
    927 F. Supp. 2d 390 (N.D. Tex. 2013) .................................................. 15

*GEO Specialty Chems., Inc. v. Husisian*,
    951 F. Supp. 2d 32 (D.D.C. 2013) ................................................. 15, 17

*Gilda Indus., Inc. v. United States*,
    446 F.3d 1271 (Fed. Cir. 2006) ............................................................ 20

*GPX Int'l Tire Corp. v. United States*,
    780 F.3d 1136 (Fed. Cir. 2015) ............................................................ 20

*Gray v. R.I. Dep't of Child., Youth, & Fams.*,
    937 F. Supp. 153 (D.R.I. 1996) ............................................................ 15

*Hyundai Pipe Co. v. U.S. Dep't of Commerce*,
    11 C.I.T. 238 (1987) ............................................................................. 23

*Int'l Custom Prods., Inc. v. United States*,
    791 F.3d 1329 (Fed. Cir. 2015) ...................................................... 20, 21

*LaSalle Nat. Bank v. Lake Cnty.*,
    703 F.2d 252 (7th Cir. 1983) ............................................................... 17

*Litton Sys., Inc. v. Sundstrand Corp.*,
    750 F.2d 952 (Fed. Cir. 1984) ....................................................... 24, 25

*Makita Corp. v. United States*,
    17 C.I.T. 240, 819 F. Supp. 1099 (Ct. Int'l Trade 1993) ................. 17, 21

*Manhattan Shirt Co. v. United States*,
    2 CIT 270 (1981) ................................................................................. 11

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ............................................................................ 10

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................ 10

*NEC Corp. v. United States*,
    151 F.3d 1361 (Fed. Cir. 1998) ........................................................... 20

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................24

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)..................................................................................11

*Norwegian Nitrogen Prods. Co. v. United States*,
    288 U.S. 294 (1933)................................................................................20

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995).................................................................16

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004), *aff'd and remanded*, 546 U.S. 418 (2006)..........................25

*Panduit Corp. v. All States Plastic Mfg. Co.*,
    744 F.2d 1564 (Fed. Cir. 1984)...............................................................25

*PSC VSMPO–Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012).................................................................13

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985)................................................................................25

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984)................................................................................20

*S.J. Stile Assocs. Ltd. v. Snyder*,
    646 F.2d 522 (C.C.P.A. 1981).................................................................23

*Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States*,
    104 F. 3d 1309 (Fed. Cir. 1997)...............................................................12

*Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*,
    74 F.3d 1216 (Fed. Cir. 1996).................................................................10

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995).......................................................................26

*U.S. Ass'n of Imps. of Textiles & Apparel v. Dep't of Com.*,
    413 F.3d 1344 (Fed. Cir. 1990)...........................................................11, 12

*United States v. O'Hagan*,
    521 U.S. 642 (1997)................................................................................20

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) .................................................................................... 13, 17

*Watkins v. Trans Union, LLC*,
    869 F.3d 514 (7th Cir. 2017) ..................................................................... 15, 17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .............................................................................................. 10

*Zenith Radio Corp. v. United States*,
    710 F.2d 806 (Fed. Cir. 1983) ................................................................... 10, 11

## Statutes

5 U.S.C. § 706(2)(A) ................................................................................................. 12

19 U.S.C. § 1671 ......................................................................................................... 3

19 U.S.C. § 1671d(c)(2) ............................................................................................. 4

19 U.S.C. § 1673 ......................................................................................................... 3

19 U.S.C. § 1677f ............................................................................................... passim

28 U.S.C. § 1581 ................................................................................................ passim

Omnibus Trade and Competitiveness Act of 1988, H.R. 4848, 100th Cong. § 1332 ................. 24

## Regulations

19 C.F.R. pt. 351 ....................................................................................................... 13

19 C.F.R. § 351.305 .................................................................................................. 13

19 C.F.R. § 351.313 ......................................................................................... 7, 13, 14

19 C.F.R. § 354.3 ......................................................................................................... 8

19 C.F.R. § 354.5 ............................................................................................... 7, 8, 19

## Rules

USCIT Rule 65(c) ...................................................................................................... 26

**Agency Decisions and Guidance**

*Certain Freight Rail Couplers and Parts Thereof From China and Mexico*,
    87 Fed. Reg. 64,444-01 (Dep't of Commerce Oct. 25, 2022) (Initiation of Antidumping Duty
    Investigation)...................................................................................................................5, 8

*Certain Freight Rail Couplers and Parts Thereof From China*, 87 Fed. Reg. 64,440-01 (Dep't of
    Commerce Oct. 25, 2022) (Initiation of Countervailing Duty Investigation)......................5, 8

*Freight Rail Coupler Systems and Certain Components Thereof From China*,
    86 Fed. Reg. 58,864-01, 58,864-65 & n.1 (Dep't of Commerce Oct. 25, 2021) (Initiation of
    Antidumping Duty Investigation)................................................................................... 2

*Freight Rail Coupler Systems and Certain Components Thereof From China*,
    86 Fed. Reg. 58,878-01 (Dep't of Commerce Oct. 19, 2021) (Initiation of Countervailing Duty
    Investigation)..................................................................................................................2, 4

*Freight Rail Coupler Systems and Certain Components Thereof From China*,
    87 Fed. Reg. 14,511 (Mar. 15, 2021) (Prelim. Antidumping Duty Determination).................. 3

*Freight Rail Coupler Systems and Certain Components Thereof From China*,
    87 Fed. Reg. 30,869-01 (Dep't of Commerce May 20, 2022) (Final Affirmative
    Countervailing Duty Determination)....................................................................... 3

*Freight Rail Coupler Systems and Certain Components Thereof From China*,
    87 Fed. Reg. 32,121-02 (Dep't of Commerce May 27, 2022) (Final Affirmative Antidumping
    Duty Determination).............................................................................................. 3

*Freight Rail Coupler Systems and Components from China*,
    Inv. Nos. 701-TA-670 and 731-TA-1570, USITC Pub. 5243 (Nov. 2021) (Preliminary
    Determinations).................................................................................................... 3

*Freight Rail Coupler Systems and Components from China*,
    USITC Inv. Nos. 701-TA-670 & 731-TA-1570 (Final), USITC Pub. 5331 (July 2022).......... 3

*Freight Rail Coupler Systems and Components Thereof from the People's Republic of China*,
    87 Fed. Reg. 12,662, (Dep't of Commerce Mar. 7, 2022) (Prelim. Affirmative Countervailing
    Duty Determination, and accompanying Decision Mem., 87 ITADOC 14,511 (Feb. 28, 2022))
    ............................................................................................................... 3

*Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives
    Appearing Before the Department*,
    78 Fed. Reg. 22,773-02 (Dep't of Commerce Apr. 17, 2013)............................................6, 7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., and ASF-K DE MEXICO S. DE R.I. DE C.V., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| U.S. DEPARTMENT OF COMMERCE, U.S. SECRETARY OF COMMERCE GINA M. RAIMONDO, in her official capacity, and UNITED STATES, | ) ) ) ) ) |
| Defendants, | ) Court No. 22-00316 ) PUBLIC VERSION ) |
| and | ) ) |
| COALITION OF FREIGHT RAIL PRODUCERS, | ) ) ) |
| Defendant-Intervenor. | ) ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Pursuant to Rule 65 of the Rules of this Court, defendants, U.S. Department of Commerce, U.S. Secretary of Commerce Gina Raimondo, and the United States (collectively, Commerce) submit this opposition to the motion for preliminary injunction filed by plaintiffs, Amsted Rail Co., Inc. (Amsted), and ASF-K de Mexico S. de R.I. de C.V. (ASF-K) (collectively, plaintiffs).

As an initial matter, the Court must inquire into its own jurisdiction before entertaining a motion for preliminary injunction.  This inquiry requires dismissal.  *See* Def. Mot. To Dismiss at 11-21, ECF No. 24 (Nov. 9, 2022).  Plaintiffs have not demonstrated that jurisdiction pursuant to

28 U.S.C. 1581(c) would be manifestly inadequate, and, thus, cannot invoke section 1581(i) jurisdiction.  Nor have plaintiffs satisfied the exacting requirements for mandamus relief. Accordingly, the Court should dismiss the case because it does not possess jurisdiction, and deny any pending motions as moot.

In the alternative, the Court should deny plaintiffs' motion because they have not satisfied their burden to establish the four elements required for injunctive relief.  First, plaintiffs are not likely to succeed on the merits.  In declining to disqualify the Firm "at this time" based on an alleged conflict of interest, Commerce reasonably followed its own regulations and internal guidance, in an area over which it possesses substantial discretion—the oversight of attorney and non-attorney representatives who present fact and argument during antidumping and countervailing duty proceedings. Likewise, by declining to exclude the Firm from its administrative protective order (APO), Commerce complied with the applicable statutory and regulatory regime.

Plaintiffs are incorrect, moreover, that Commerce's proceedings will unlawfully deprive them of a protected privacy interest in confidential information.  This due process argument misunderstands that, pursuant to the applicable statutory framework, plaintiffs are not required to share business proprietary information with other interested parties.  Failure to do so simply prevents Commerce from considering that information, and may result in a less favorable result in the antidumping or countervailing duty proceeding.  Because parties have no due process right to a particular duty when engaging in international trade, however, this framework causes no deprivation of due process.  In sum, plaintiffs are unable to demonstrate that Commerce's decisions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and, thus, unable to demonstrate likelihood of success on the merits.

Plaintiffs' arguments are no more persuasive on the remaining equitable factors. Plaintiffs have not shown immediate and irreparable harm absent the injunction. Specifically, they failed to identify any concrete and prejudicial harm they would suffer by continuing with the Commerce proceeding and exhausting administrative remedies. By contrast, pursuant to the balancing of the harms and public interest prongs, an injunction would cause serious harm to Commerce and other parties to the antidumping and countervailing duty proceedings. Depriving the petitioners of their choice of counsel—either by disqualification, exclusion from the APO, or both—would undermine orderly decisionmaking in important Commerce proceedings. This interference with important agency decisionmaking would not be remediable through a Rule 65(c) bond. Accordingly, the equities militate against granting plaintiffs' requested relief.

Finally, plaintiffs do not seek to maintain the status quo—in which the Firm serves as counsel for the petitioner and has access to Commerce's APO—but rather to alter it. Such requests are disfavored at the preliminary injunction stage, providing yet another reason to deny plaintiffs' extraordinary request.

## FACTUAL AND PROCEDURAL HISTORY

I.     The Prior Investigations Into Freight Rail Coupler Systems From China

The facts giving rise to plaintiffs' allegations trace back to September 29, 2021, when a coalition of domestic producers, including Amsted (but not its Mexican supplier ASF-K), filed a petition alleging that certain freight rail couplers from the People's Republic of China (China) were being sold at less than normal value, pursuant to 19 U.S.C. § 1673, and provided with countervailable subsidies by the government of China, pursuant to 19 U.S.C. § 1671, and that

these imports materially injured, or threatened to materially injure, the domestic industry.[1]  In

October, 2021, Commerce initiated the countervailing and antidumping duty investigations,[2] and

the International Trade Commission (ITC) also opened an investigation into material injury[3]

(collectively, the prior investigations).

On March 7 and 15, 2022, respectively, Commerce issued preliminary affirmative

determinations in the countervailing and antidumping duty investigations.[4]  On May 20 and 27,

respectively, Commerce issued final affirmative determinations in the countervailing and

antidumping duty investigations.[5]  In a final determination issued on July 1, 2022, however, the

ITC concluded that the domestic industry was not materially injured or threatened with material

injury by reason of imports of freight rail coupler systems from China.[6]  This terminated the

investigations.  *See* 19 U.S.C. § 1671d(c)(2); 19 U.S.C. § 1673d(c)(2).

---

[1]  *See, e.g.*, *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China*, 86 Fed. Reg. 58,864-01, 58,864-65 & n.1 (Dep't of Commerce Oct. 25, 2021) (Initiation of Antidumping Duty Investigation).

[2]  *Id.*; *Freight Rail Coupler Systems and Certain Components From the People's Republic of China*, 86 Fed. Reg. 58,878-01 (Dep't of Commerce Oct. 19, 2021) (Initiation of Countervailing Duty Investigation).

[3]  *See Freight Rail Coupler Systems and Components from China*, USITC Inv. Nos. 701-TA-670 & 731-TA-1570 (Final Determinations), USITC Pub. 5331 (July 2022), at *3.

[4]  *See Freight Rail Coupler Systems and Components Thereof from the People's Republic of China*, 87 Fed. Reg. 12,662, (Dep't of Commerce Mar. 7, 2022) (Prelim. Affirmative Countervailing Duty Determination, and accompanying Decision Mem., 87 ITADOC 14,511 (Feb. 28, 2022)); *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China*, 87 Fed. Reg. 14,511 (Mar. 15, 2021) (Prelim. Antidumping Duty Determination).

[5]  *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China*, 87 Fed. Reg. 30,869-01 (Dep't of Commerce May 20, 2022) (Final Affirmative Countervailing Duty Determination); *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China*, 87 Fed. Reg. 32,121-02 (Dep't of Commerce May 27, 2022) (Final Affirmative Antidumping Duty Determination).

[6]  *Freight Rail Coupler Systems & Components from China*, USITC Inv. No. 701-TA-670 (July 1, 2022) (Final Determinations); *see also Freight Rail Coupler Systems and Components*

Amsted's conflict-of-interest allegations date back to early October 2021, when Amsted terminated its relationship with [[████████████]][7] (the Attorney), then an attorney at Wiley Rein who served as counsel for the Coalition of Freight Rail Producers.  *See* Compl. ¶¶ 15-17, 20-21, 24-25, ECF Nos. 5, 22.  On October 6, 2021, before Commerce had initiated the prior investigations, the coalition filed a petition amendment, noting that Amsted "is no longer a member of the petitioning coalition{.}"[8]  On October 14, 2021, Amsted's current attorneys, the law firm of Faegre Drinker Biddle & Reath LLP, entered an appearance in the prior investigations.  Compl. ¶ 25.  To the extent this transition created any conflict of interest, Amsted had signed an advanced conflicts waiver "{s}pecifically . . . agree{ing} to waive all current or former conflicts with Wiley Rein with respect to antidumping, countervailing duty, or other trade investigations," and committing not to seek "disqualification of Wiley Rein in regard to, or on the basis of, any antidumping, countervailing duty, or other trade remedy investigation." *See* Compl. ¶ 19.  Approximately five months after Amsted's change in attorneys, on March 8, 2022, the Attorney left Wiley Rein and moved to [[███████████████████]] (the Firm).  Compl. ¶¶ 33-34.

The facts relevant to the alleged violation of Commerce's APO also originated in the prior investigations.  Specifically, on July 15, 2022, after the ITC's negative injury determination and when Commerce's prior investigations were "effectively" concluded, plaintiffs allege that

---

*from China*, Inv. Nos. 701-TA-670 and 731-TA-1570, USITC Pub. 5243 (Nov. 2021) (Preliminary Determinations).

[7]  Consistent with the treatment of information in *Amsted v. U.S. International Trade Commission*, Docket No. 22-cv00307-GSK, this filing treats the identities of the Attorney and the Firm as confidential.

[8]  *See Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China*, 86 Fed. Reg. 58,878-01, 58,883 & n.2 (Dep't of Commerce Oct. 19, 2021) (Initiation of Countervailing Duty Investigation).

the Firm added "seven attorney applicants and two non-attorney applicants" to Commerce's APO in the prior investigations.  Compl. ¶ 42.  The complaint does not allege that Amsted raised any concerns at the time that this access violated Commerce's rules governing APOs.

II.      Current Investigations Into Freight Rail Coupler Systems From China And Mexico

On September 28, 2022, a coalition of domestic producers represented by the Firm filed countervailing duty petitions concerning imports of freight rail couplers from China and antidumping duty petitions concerning imports of freight rail couplers from China and Mexico.[9] "In the Petitions, the petitioner identified one company as a producer/exporter of freight rail couplers in Mexico, ASF-K," plaintiff in this case.[10]

On October 12, 2022, days before Commerce's deadline to decide whether to initiate the investigations, Amsted and its affiliated Mexican supplier ASF-K sent a letter asking Commerce (1) to disqualify the Firm as counsel for petitioner, (2) to rescind the Firm's access to the APO, and (3) to dismiss the petitions or terminate the investigations under Commerce's sanctions authority.  Ex. 1, Def. Mot. to Dismiss, ECF No. 24-3 (Nov. 9, 2022) (Pl. Request to Disqualify).[11]  The request for disqualification was premised on the Attorney's prior representation of Amsted, as set forth above.  *Id.* at 3-7.  The alleged violation of Commerce's

---

[9]  *See* Compl. ¶ 44; *see also Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China and Mexico*, 87 Fed. Reg. 64,444-01 (Dep't of Commerce Oct. 25, 2022) (Initiation of Antidumping Duty Investigation); *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China*, 87 Fed. Reg. 64,440-01 (Dep't of Commerce Oct. 25, 2022) (Initiation of Countervailing Duty Investigation).

[10]  *See Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China and Mexico*, 87 Fed. Reg. 64,444-01 (Dep't of Commerce Oct. 25, 2022) (Initiation of Antidumping Duty Investigation).

[11]  Exhibit 1 attached to the Motion to Dismiss is a confidential version of the letter.  A public version of the letter is attached as Exhibit 1, Resp. to Mot., *Amsted Rail Co. v. Int'l Trade Comm'n*, Docket No. 22-cv-00307-GSK, ECF No. 52-1 (Oct. 26, 2022).

APO, in turn, was based on the addition (months earlier in July 2022) of Firm attorneys to the prior investigations' APO. *Id.* at 8. "On information and belief," plaintiffs alleged that the Firm used confidential information from the prior investigations "as a springboard" for the current investigations. *Id.* at 2. Plaintiffs did not allege that the Firm or the Attorney has shared or will share business proprietary information with any of plaintiffs' competitors or with the public.

On October 18, 2022, the Firm responded on behalf of the petitioner, contending that "(1) no conflict of interest exists; (2) even assuming arguendo that a conflict existed {Amsted} has expressly waived any conflict and has agreed in writing [[                    ]];" and (3) the Firm and petitioner "have relied on such waiver in good faith." Ex. 2 at 1, Def. Mot. to Dismiss, ECF No. 24-4 (Nov. 9, 2022) (Firm Opp. to Disqualification). Petitioner explained that, although it was "now adverse to ASF-K . . . , a foreign manufacturer of subject merchandise," ASF-K was never "a client or former client" of Wiley or the Firm. *Id.* at 2. Instead, petitioner maintained, [[                                    ]], and "[[                                    ]]." *Id.* Petitioner argued that Amsted's attempt to disqualify the Firm was "no more than a veiled litigation strategy employed to frustrate the Coalition's right to seek trade remedies on behalf of the domestic industry." *Id.*

Commerce responded to plaintiffs' letter on October 18, 2022. Ex. 3, Def. Mot. to Dismiss, ECF No. 24-5 (Nov. 9, 2022) (Commerce Letter). As an initial matter, Commerce noted that the date of the "statutory deadline for determining whether to initiate the investigations is October 18, 2022," and that, having received the letter less than a week before, "Commerce has evaluated your letter in the limited timeframe prior to initiation." *Id.* Based on this expedited review, Commerce declined to grant plaintiffs' request "at this time." *Id.*

As to the alleged conflict of interest, Commerce declined "to address the ethical questions raised by Amsted's filings at this time," citing the preamble to its regulation governing attorneys and non-attorney representatives. *Id.* (citing *Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773-02 (Dep't of Commerce Apr. 17, 2013)); *see also* 19 C.F.R. § 351.313. In this preamble, Commerce explained that "{t}his rule is not intended to cover ethical conflicts uniquely within the province of local Bar authorities," such as "claims . . . that a former law firm lawyer is representing a new client whose interest conflicts with the attorney's former clients." *Id.* "Instead, to the extent a law firm or individual attorney believes that an ethical breach is occurring or has occurred, they should follow the appropriate professional responsibility guidelines and ethical canons." *Id.* Considering this limitation on the scope of Commerce inquiries into alleged misconduct by attorneys or attorney representatives, Commerce notified plaintiffs that it did "not consider it appropriate to address the ethical questions raised by Amsted's filings at this time." Ex. 3 at 2.

As to the alleged violation of the APO, Commerce regulations provide that an employee "who has information indicating that the terms of an administrative protective order have been violated will provide the information to the Senior APO Specialist or the Chief Counsel." 19 C.F.R. § 354.5(a). Recognizing the serious implications for granting or denying access to business proprietary information, the regulation ensures neutrality by providing that "{n}o director shall investigate an alleged violation that arose out of a proceeding for which the director was responsible." *Id.* § 354.5(b). In responding to plaintiffs' allegation regarding the potential APO violation, Commerce responded that, pursuant to its regulations, it had "referred the information to the director of the APO unit." Ex. 3 at 2 (citing 19 C.F.R. §§ 354.3, 354.5(b)).

By regulation, the APO Director who is responsible for conducting any investigation then has 90 to 180 days, depending on the circumstances surrounding the alleged violation, to complete a report to the Deputy Under Secretary for International Trade, after obtaining review from the Chief Counsel. 19 C.F.R. § 354.5(b).

Finally, Commerce denied the request to dismiss the underlying petitions as a sanction, given that the request was "premised on the alleged APO violations and ethical conflicts" addressed above. Ex. 3 at 2. "{A}t this time," Commerce found "no appropriate basis on which to grant this request." *Id.*

Days later, Commerce initiated a countervailing duty investigation into certain freight rail couplers and parts thereof from China, and an antidumping duty investigation into certain freight rail couplers and parts thereof from China and Mexico (collectively, the current investigations).[12]

III.   Plaintiffs File Applications For Injunctive Relief

On October 14, 2022, plaintiffs filed a new case in this Court against the ITC, seeking to enjoin the release of business proprietary information submitted by plaintiffs in the current ITC investigation. *See* Compl., *Amsted v. ITC*, CIT No. 22-cv-00307-GSK, ECF No. 14 (Oct. 14, 2022); Pl. Mot., ECF No. 15 (Oct. 14, 2022). On October 17, 2022, the Court stayed the submission and release of business proprietary information in the ITC proceeding. Am. Order, ECF No. 25 (Oct. 17, 2022). The next day, the Court granted plaintiffs' motion for a temporary restraining order. Order, ECF No. 28 (Oct. 18, 2022). On October 27, 2022, the Court ordered an extension of the temporary restraining order until November 15, 2022, at 10:30 AM, ordered

---

[12] *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China and Mexico*, 87 Fed. Reg. 64,444-01 (Dep't of Commerce Oct. 25, 2022) (Initiation of Antidumping Duty Investigations); *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China*, 87 Fed. Reg. 64,440-01 (Dep't of Commerce Oct. 25, 2022) (Initiation of Countervailing Duty Investigation).

further briefing on the plaintiffs' motion, and scheduled a hearing.  Order, ECF No. 54 (Oct. 27, 2022).  On November 9, 2022, the Court held a hearing on plaintiffs' motion for preliminary injunction.  Appearance Sheet, ECF No. 76 (Nov. 9, 2022).

Several days after the hearing date was set in the ITC case, plaintiffs filed this case against Commerce, similarly seeking to require Commerce to disqualify the Firm and to enjoin the Firm's access to business proprietary information.  Compl., *Amsted v. Commerce*, CIT No. 22-cv-00316, ECF No. 5 (Oct. 31, 2022).  On Friday, November 4, 2022, plaintiffs filed a motion for preliminary injunction and expedited briefing.  Pl. Mot., ECF No. 17 (Nov. 4, 2022).

In parallel with the expedited briefing in this Court, Commerce continues to proceed with the ongoing antidumping and countervailing duty investigations, in compliance with statutory procedures and deadlines.

## **QUESTION PRESENTED**

The question presented is whether the Court should deny plaintiffs' request for a preliminary injunction, when plaintiffs have not satisfied their burden to establish this Court's jurisdiction or the four elements required for injunctive relief.

There are four sub-questions presented:

(1) Does the Court possess jurisdiction to entertain this action pursuant to 28 U.S.C. § 1581(i), when other sources of jurisdiction are not manifestly inadequate?

(2) Have plaintiffs failed to demonstrate that they are likely to succeed on the merits that Commerce acted arbitrarily and capriciously in declining to immediately disqualify the Firm from appearing, or accessing the administrative protective order, in ongoing antidumping and countervailing duty proceedings?

(3) Have plaintiffs failed to identify any concrete irreparable harm that they will suffer absent preliminary injunctive relief?

(4) Do the balancing of the harms and public interest weigh against plaintiffs' request to change the status quo by disqualifying the Firm from agency proceedings?

## **ARGUMENT**

I.   Standard of Review For Granting Injunctive Relief

"{A} preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."   *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).   A preliminary injunction is "never awarded as of right."   *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

"To receive a preliminary injunction, the movant must show '(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest.'"   *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019) (quoting *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018)).   "Central to the movant's burden are the likelihood of success and irreparable harm factors."   *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1219 (Fed. Cir. 1996).   "{C}ase law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm."   *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1350 (Fed. Cir. 2001).

While the Court has broad discretion to grant or withhold injunctions, preliminary injunctive relief must be granted "sparingly" due to its extraordinary nature.   *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *Manhattan Shirt Co. v. United States*, 2 CIT

11

270, 272 (1981).  Preliminary injunctive relief should only be granted upon a clear showing by the moving party that it is entitled to the relief requested.  *Am. Inst. for Imported Steel, Inc. v. United States*, 8 CIT 317 (1984).  Further, the Court must be cautious to avoid "undue judicial interference with the lawful discretion given to agencies."  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1384 (Fed. Cir. 2009) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004)).

II.      Plaintiffs' Request For Preliminary Injunctive Relief Should Be Denied As Moot
         Because The Court Does Not Possess Jurisdiction Pursuant to 28 U.S.C. § 1581(i)

         For the reasons discussed in our motion to dismiss, plaintiffs have not demonstrated that the Court possesses jurisdiction pursuant to the Court's residual jurisdiction in 28 U.S.C. § 1581(i) or the Court's equitable authority to grant mandamus relief.  *See generally* Def. Mot. to Dismiss at 11-21, ECF No. 24 (Nov. 9, 2022).  Before the Court may entertain a motion for preliminary injunction, it must assure itself that it possesses jurisdiction to adjudicate the case. In *U.S. Association of Importers of Textiles and Apparel v. U.S. Department of Commerce*, for example, the Federal Circuit reversed this Court's grant of a preliminary injunction, holding that the Court erred in holding "that the jurisdictional arguments could be ignored in ruling on the {plaintiff's} preliminary injunction motion."  413 F.3d 1344, 1348 (Fed. Cir. 2005).  The Court explained that "{t}he question of jurisdiction closely affects the {plaintiff's} likelihood of success on its motion for a preliminary injunction," so "{f}ailing to consider {jurisdiction} was legal error."  *Id.*  Indeed, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Because this Court does not possess jurisdiction to adjudicate plaintiffs' claims, it should dismiss the complaint and deny all pending motions as moot.

III.   Plaintiffs Fail To Prove That They Are Likely To Succeed On The Merits

Even assuming this Court possesses jurisdiction to adjudicate this case, plaintiffs have not demonstrated likelihood of success on the merits.  In a section 1581(i) action, the Court applies the standard of review set forth in the Administrative Procedures Act.  *Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States*, 104 F. 3d 1309, 1313 (Fed. Cir. 1997).  The Court may "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

The two issues raised in the complaint—regulation of attorney conduct and administration of the APO—are areas over which Commerce exercises broad discretion. Plaintiffs fail to demonstrate that, in addressing plaintiffs' challenges on these issues, Commerce has violated any law, acted arbitrarily or capriciously, or otherwise abused its discretion. Accordingly, plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claims.

A.   Commerce Reasonably Declined To Disqualify The Attorney Or The Firm At This Time

"Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."  *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc*., 435 U.S. 519, 543 (1978) (quoting *FCC v. Schreiber*, 381 U.S. 279, 290 (1965)) (cleaned up) (stating that the Supreme Court's precedent "could hardly be more explicit in this regard").  "Commerce generally has discretion to create its own rules of procedure related to the development of record information."  *PSC VSMPO–Avisma Corp. v. United States*, 688 F.3d 751, 760–61 (Fed. Cir. 2012) (citing *Vt.*

13

*Yankee*, 435 U.S. at 543).  Pursuant to this authority, Commerce has promulgated regulations

relating to the submission of information and argument in antidumping and countervailing duty

investigations and administrative reviews.  *See* 19 C.F.R. §§ Part 351, Subpart C (listing

regulations for time limits, format and certification of documents, verification of information,

and more).  As relevant here, such regulation includes "access to business proprietary

information," 19 C.F.R. § 351.305, "use of business proprietary information," *id.* § 351.306, and

regulation of "attorneys or representatives" who may submit information and argument, *id.*

§ 351.313.

Commerce has reasonably exercised its discretion to regulate attorney conduct in the

course of antidumping and countervailing duty proceedings.  Generally, Commerce allows both

attorneys and non-attorney representatives to submit information and argument in such

proceedings.  19 C.F.R. § 351.313.  Although Commerce neither maintains a register of

advocates, nor requires an "application for admission to practice," "{a}ny person desiring to

appear as attorney or representative . . . may be required to show to the satisfaction of the

Secretary his acceptability in that capacity." *Id.*  Additionally, "{a}ny attorney or representative

practicing before the Department, or desiring so to practice, may for good cause shown be

suspended or barred from practicing . . . , or have imposed on him such lesser sanctions (*e.g.*,

public or private reprimand) as the Secretary deems appropriate." *Id.*  "Good cause" for

suspension may arise from attorney conduct "that directly affects the integrity of {Commerce's}

proceedings and that would be considered improper," such as "knowingly providing incorrect

information to the agency; knowingly making misrepresentations of fact or law; {or} knowingly

making false accusations in a proceeding." *Regulation Strengthening Accountability of*

14

*Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773-02 (Dep't of Commerce Apr. 17, 2013).

Commerce has reasonably determined, however, that its regulation of attorneys does not "cover ethical conflicts uniquely within the province of local Bar authorities." *Id.* In the preamble to 19 C.F.R. § 351.313, Commerce explained that "the Department will not consider claims . . . that a former law firm lawyer is representing a new client whose interest conflicts with the attorney's former clients." *Id.* "Instead, to the extent a law firm or individual attorney believes that an ethical breach is occurring or has occurred, they should follow the appropriate professional responsibility guidelines and ethical canons." *Id.* Consistent with this rule, Commerce has historically declined to intervene in disagreements over conflicts of interest between attorneys and former clients.[13] Applying that rule here, Commerce properly responded to plaintiffs' request for disqualification based on alleged conflict of interest, declining to entertain plaintiffs' challenge "at this time." *See* Ex. 3, ECF No. 24-5 at 2.

Contrary to plaintiffs' arguments, Pl. Mot. at 25-27, Commerce has reasonably chosen to avoid entangling itself in complex areas of attorney ethics and conflicts of interest. As a general

---

[13]  *See, e.g.*, *Ripe Olives From Spain*, 86 Fed. Reg. 35,068-01 (Dep't of Commerce July 1, 2021) (Final Results of Antidumping Duty Administrative Review 2018-2019, and Issues and Decision Mem., 86 ITA Doc 35,068 (July 25, 2021)) (stating that "to the extent that BCF alleges that Musco's counsel may have had a conflict of interest and may have violated DC Bar Rules of Professional Conduct, this is not a matter for Commerce to resolve because Commerce is not an appropriate tribunal for resolving allegations of professional misconduct by DC Bar members").

Plaintiffs cite a letter in another investigation in which Commerce declined to disqualify counsel, after touching briefly on the merits of the conflicts analysis. *See* Pl. Mot. at 27 (citing *Silicon Metal from the Republic of Kazakhstan: Representation of Tau-Ken Temir LLP by Squire Patton Boggs*, DOC Inv. No. C-834-811 (Dep't of Commerce Oct. 6, 2020)) (*Silicon Metal*). In that proceeding, Commerce declined to disqualify the attorney after considering the court's analysis in *GEO Specialty Chem., Inc. v. Husisian*, 951 F. Supp. 2d 32, 42 (D.D.C. 2013). Although Commerce could have shortened its analysis by relying on the regulatory preamble, there is no inconsistency between the result in *Silicon Metal* and the decision here.

matter, motions to disqualify attorneys based upon conflicts of interest are high stakes and carry

significant "potential for abuse." *Galderma Lab'ys, L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp.

2d 390, 394–95 (N.D. Tex. 2013); *Gray v. Rhode Island Dep't of Child., Youth & Fams.*, 937 F.

Supp. 153, 156 (D.R.I. 1996) (noting the "increasingly strategic manner" in which motions to

disqualify are used). An erroneous decision to disqualify an attorney has the potential to delay

and derail an ongoing agency proceeding, and often carries "'immediate, severe, and often

irreparable consequences' for the party and the disqualified attorney." *Watkins v. Trans Union,*

*LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (quoting *Freeman v. Chicago Musical Instrument Co.*,

689 F.2d 715, 719 (7th Cir. 1982)).

      Moreover, although Commerce is an expert agency in the area of unfair trade practices

and remedies, it is not an expert in the complex area of conflict-of-interest rules. Given the

complexity and high stakes of such inquiries, and their potential to derail otherwise orderly

agency proceedings, it is reasonable for Commerce to generally decline to entertain motions to

disqualify attorneys based on alleged conflicts of interest. Plaintiffs' conflict-of-interest

allegations present complex issues involving (1) the identity of the former client (Amsted versus

ASF-K), (2) the presence of material adversity, and (3) the implications of conflict-of-interest

waivers and joint representation. *See* Ex. 2, ECF No. 24-4; *see also* Declaration of Michael S.

Frisch, *Amsted v. ITC*, 22-cv-00307-GSK, ECF No. 64-1 (Nov. 2, 2022). Such complexities

illustrate the soundness of Commerce's policy to generally avoid such matters, which can be

addressed in other venues.[14] Indeed, by doing so, Commerce properly maintains its focus on its

---

[14] For example, Commerce cited the option of filing a complaint with "local Bar
authorities." *Regulation Strengthening Accountability of Attorneys and Non-Attorney*
*Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773-02 (Dep't of Commerce
Apr. 17, 2013).

primary obligation—"to carry out its statutory duty" of timely and accurately conducting antidumping and countervailing duty investigations and reviews.  *See Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) (quoting *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995)) (emphasizing Commerce's statutory duties in evaluating the reasonableness of its decisions).

Despite Commerce's reasonable decision to generally avoid such inquiries during antidumping and countervailing duty proceedings, plaintiffs submit lengthy argument regarding each of the factors relevant to the conflict-of-interest dispute—including the identity of the former client, Pl. Mot. at 17, the presence of material adversity, *id*. at 17-19, the substantially related prior and current investigations, *id*. at 20-21, the validity of the advance conflict waivers, *id*. at 21-22, the implications of the prior joint representation, *id*. at 22-23, and the appropriateness of disqualification, *id*. at 23-25. Importantly, however, the question presented in this case is not whether the Court would conclude, in the first instance, whether there is a disqualifying conflict of interest, but whether Commerce acted arbitrarily and capriciously in declining to disqualify the Firm.  Although this Court possesses authority to disqualify attorneys from a "judicial proceeding" otherwise within the Court's jurisdiction, *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017), it may not devise its own rules relating to the submission of information and argument before Commerce.  To do so would "depart{} from the very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure."  *Vt. Yankee*, 435 U.S. at 544 (citing *FCC v. Schreiber*, 381 U.S. at 290).

This is where the Court erred in *Makita*, a case heavily cited by plaintiffs.  *E.g.*, Pl. Mot. at 16, 19, 21, 24, 26 (citing *Makita Corp. v. United States,* 17 C.I.T. 240, 819 F. Supp. 1099, 1104-08 (Ct. Int'l Trade 1993)).  In *Makita*, the court engaged in a wide-ranging and *de novo*

analysis of the conflict-of-interest allegations, divorced from the agency's findings and exercise of discretion. *See generally*, *Makita*, 819 F. Supp. at 1104-07. Yet such *de novo* and interlocutory review would have been erroneous even if undertaken by an appellate court reviewing a district court on the same issue. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) (denying interlocutory review for orders "refusing to disqualify counsel"); *LaSalle Nat. Bank v. Lake Cnty.*, 703 F.2d 252, 256 (7th Cir. 1983) (holding that trial court decisions regarding disqualification are reviewed under the "abuse of discretion" standard). Pursuant to the APA standard of review, agencies are entitled to even greater discretion in establishing and applying procedures regarding attorney oversight during agency proceedings.

Contrary to plaintiffs' arguments, moreover, declining to immediately disqualify the Firm does not "{t}olerat{e}" any alleged conflict of interest. Pl. Mot. at 26. Plaintiffs may report the alleged professional misconduct to the District of Columbia Bar. If appropriate, they may attempt to pursue relief against the Attorney or the Firm. *See, e.g.*, *GEO Specialty Chemicals, Inc. v. Husisian*, 951 F. Supp. 2d 32, 37 (D.D.C. 2013). What plaintiffs cannot do, however, is derail the important work of ongoing antidumping and countervailing duty investigations before the Department of Commerce.

Finally, the time-sensitive nature of the posture before Commerce—in which plaintiffs filed their request days before the deadline to determine whether to initiate the investigations—further weighs in favor of the reasonableness of Commerce's decision. Because plaintiffs have not demonstrated that Commerce acted arbitrarily and capriciously in declining to disqualify the Attorney and the Firm, plaintiffs have not demonstrated that they are likely to succeed on the merits of their claim.

B.    Commerce Reasonably Applied Its Procedures For Alleged Violations Of Its
        Administrative Protective Order

Plaintiffs have also failed to demonstrate likelihood of success on their arguments

regarding the alleged APO violation.  Plaintiffs allege that it was arbitrary and capricious and an

abuse of due process for Commerce to refer the alleged APO violation to the APO Unit rather

than immediately excluding the Attorney and the Firm from the APO on an ongoing basis.  Pl.

Mot. at 27-29.  Such arguments, however, conflict with Congress's detailed instructions for

handling proprietary information and with Commerce's significant discretion in implementing

those instructions.

As an initial matter, Commerce generally "shall" make business proprietary information

"available to interested parties who are parties to the proceeding" pursuant to an APO.  19 U.S.C.

§ 1677f(c)(1).  This preference for access appears throughout the statute.  For example, although

parties may decide whether to consent to disclosure of their business proprietary information

under the APO, 19 U.S.C. § 1677f(b)(1)(A), Commerce "shall" return and decline to consider

information that a party refuses to release under the APO.  *Id.* § 1677f(c)(1)(E).  Moreover,

parties submitting information to Commerce must "at the same time, serve the information upon

all interested parties who are parties to the proceeding, if the information is covered by a

protective order." *Id.* § 1677f(d).  Plaintiffs' argument that Commerce was required to

immediately exclude the Firm from accessing the APO, Pl. Mot. at 27-29, conflicts with this

statutory preference for interested parties in Commerce proceedings to have access to business

proprietary information pursuant to the terms of the APO.

Plaintiffs' argument also conflicts with Commerce's significant discretion to regulate

alleged violations of its APO.  The APO, for example, "shall contain such requirements as"

Commerce "may determine by regulation to be appropriate."  19 U.S.C. § 1677f(c)(1)(B).

19

Commerce, moreover, possesses discretionary authority to enforce violations of protective orders, and to "provide by regulation" for sanctions that it "determine{s} to be appropriate{.}" 19 U.S.C. § 1677f(c)(1)(B).  Exercising this authority, Commerce promulgated regulations at 19 C.F.R. §§ 354.1 *et seq*, which establish procedures for referring, investigating, and reporting on alleged violations of protective orders.  Specifically, 19 C.F.R. § 354.5 provides that an employee with information "indicating" a potential APO violation should refer that information "to the Senior APO Specialist or the Chief Counsel." 19 C.F.R. § 354.5.  Consistent with that provision, Commerce reasonably responded to plaintiffs' allegations by referring the concerns to the APO Unit.[15]  Ex. 3 at 2.

Plaintiffs' demand for immediate disqualification is also at odds with the nature of its allegations.  Although plaintiffs argue that they offered information "suggesting" a potential APO violation, Pl. Mot. at 27, there is no allegation that the Attorney or the Firm have shared or will share business proprietary information with any of plaintiffs' competitors or with the public. Commerce did not act arbitrarily and capriciously by declining to immediately exclude the Firm from the APO based upon such allegations filed immediately before the statutory initiation date.

Nor have plaintiffs demonstrated any violation of due process.  The Constitution's "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Int'l Custom Prod., Inc. v. United States*, 791 F.3d 1329, 1337–38 (Fed. Cir. 2015) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972)).  Plaintiffs claim that they have a protectible property interest in their confidential

---

[15] Plaintiffs filed this case in proximity to the referral.  Because any such proceedings into APO violations "shall be kept confidential" unless or until Commerce makes a determination, we cannot discuss whether there is or is not such a proceeding. *See* 19 C.F.R. § 354.17(a).

business information, and that Commerce's refusal "to timely rescind the Firm's authorization to access Plaintiffs' BPI" deprives them of that right without a meaningful opportunity to be heard. Compl. ¶¶ 96-100 (citing *United States v. O'Hagan*, 521 U.S. 642, 654 (1997); *Carpenter v. United States*, 484 U.S. 19, 26 (1987); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984)); *see also* Pl. Mot. at 29. Here, however, the only potential negative consequence of plaintiff ASF-K's refusal to submit confidential information to Commerce would be an unfavorable decision imposing an antidumping or countervailing duty order. It is well-established that plaintiffs do "not have a legitimate claim of entitlement" to a specific duty rate. *Int'l Custom Prod., Inc.*, 791 F.3d at 1337.[16] "{T}he Constitution does not provide a right to import merchandise under a particular . . . rate of duty," *A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997), or even afford "a protectable interest to engage in international trade," *Am. Ass'n of Exporters & Importers–Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985); *accord NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998) ("{E}ngaging in foreign commerce is not a fundamental right protected by notions of substantive due process.").[17]

    To be sure, plaintiff ASF-K may choose to cooperate with Commerce's investigation— including by submitting confidential information—to avoid the imposition of an order or to

---

[16]  *See also Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 318 (1933) ("No one has a legal right to the maintenance of an existing rate or duty."); *GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136, 1144 (Fed. Cir. 2015) (same); *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1284 (Fed. Cir. 2006) ("{E}xecutive actions involving foreign trade, such as the imposition of tariffs, do not constitute the taking of property without due process of law.").

[17]  This case is thus distinguishable from *Cleveland Board of Education v. Loudermill*, cited by plaintiffs, Pl. Mot. at 29, because the plaintiffs in that case "had a property right in continued employment" created by Ohio statute. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

mitigate the rate.  Congress has provided, however, that if parties choose to submit confidential

information to Commerce, they must also agree to make it available to other interested parties

pursuant to the APO.  19 U.S.C. § 1677(b), (c).  To the extent parties decline to share their

information with other interested parties under the APO, Commerce "shall return the

information" and "shall not consider" it.  19 U.S.C. § 1677f(c)(1)(E).  In other words, parties are

not required to disclose their confidential information under the APO, but failure to do so means

that Commerce may not consider it.  *See* 19 U.S.C. § 1677(c).[18]  To the extent process is due to

plaintiffs in the ongoing Commerce proceedings, that requirement is satisfied by the opportunity

for plaintiffs to raise any concerns in a case brief to Commerce, and to seek judicial review

pursuant to 28 U.S.C. § 1581(c), after the final determination.  *Cf. Int'l Custom Prod., Inc. v.*

*United States*, 791 F.3d 1329, 1337–38 (Fed. Cir. 2015) (listing the availability of agency and

judicial review "to the extent process {was} due" to an importer challenging customs

classification).

      Plaintiffs' claim to a due process right to exclude another interested party from the APO

would subvert Congress's carefully crafted statutory procedures for handling business

proprietary information.  Because Commerce has not deprived plaintiffs of any constitutionally

protected property interest, and has not acted arbitrarily and capriciously by allowing the Firm to

access its APO, plaintiffs are not likely to succeed in demonstrating that Commerce's actions are

arbitrary, capricious, or otherwise not in accordance with law.

---

[18]  Plaintiffs argue that such a framework provides nothing more than a Hobson's choice between two bad options.  Pl. Mot. at 26 (citing *Makita*, 819 F. Supp. at 1108).  But the fact that plaintiffs would have made different policy choices than Congress should play no role in the Court's adjudication of this case.

IV.    Plaintiffs Have Failed To Demonstrate Immediate, Irreparable Harm

To obtain injunctive relief, plaintiff must establish a viable threat of imminent irreparable

harm before the Court can determine its entitlement to relief on the merits. "A preliminary

injunction will not issue simply to prevent a mere possibility of injury, even where prospective

injury is great. A presently existing, actual threat must be shown." *S.J. Stile Assocs. Ltd. v.*

*Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)); *see also Asociacion Colombiana de Exportadores*

*de Flores v. United States*, 13 CIT 584, 588 (1989) (explaining that, to obtain preliminary

injunctive relief, plaintiff must show "that they will be immediately and irreparably injured").

Plaintiffs fail to identify any concrete and immediate harm that they will suffer if required

to wait until the Court can resolve the case on the merits, or until Commerce completes its

normal administrative process. Instead, plaintiffs cite to an alleged "ongoing ethical violation"

as the source of irreparable harm. Pl. Mot. at 29. For decades, however, it has been settled law

that mere disagreement with a lower tribunals' decision not to disqualify counsel does not cause

irreparable harm. *See Firestone Tire*, 449 U.S. at 376.

In *Firestone Tire*, for example, the Supreme Court rejected the argument that waiting

until final judgment before appealing the district court's disqualification decision would cause

irreparable harm. *Id.* Similar to plaintiffs here, Pl. Mot. at 29-30, the *Firestone Tire* petitioner

argued that the lower court proceedings "may be indelibly stamped or shaped with the fruits of a

breach of confidence or by acts or omissions prompted by a divided loyalty." *Firestone Tire*,

449 U.S. at 376 (citation omitted). The Supreme Court rejected this claim, explaining that

"petitioner fails to supply a single concrete example of the indelible stamp or taint of which it

warns." *Id.* The nature of disqualification motions, moreover, meant that "{t}he propriety of the

district court's denial of a disqualification motion will often be difficult to assess until its impact

on the underlying litigation may be evaluated, which is normally only after final judgment." *Id.* at 377. "The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case . . . , and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." Accordingly, the Court held that petitioner could not immediately appeal the district court's denial of its motion to disqualify opposing counsel. *Id.*

The same reasoning defeats plaintiffs' arguments regarding irreparable harm. This Court finds itself in a similar posture as in *Firestone Tire*, being asked to review, on an expedited and interlocutory basis, a lower tribunal's denial of a request to disqualify counsel. As in *Firestone Tire*, plaintiffs make broad claims regarding the harm flowing from the alleged conflict of interest, but fail to "supply a single concrete example" of the alleged harm. *See id.* at 376. This case, therefore, "falls within the large class of orders" that do not merit interlocutory review or extraordinary equitable relief, but rather may await merits consideration following the orderly conclusion of proceedings at the lower tribunal. *Cf. id.* at 377.

Plaintiffs also argue they will suffer irreparable harm from having to share business proprietary information with the Firm. Pl. Mot. at 30. To the extent plaintiffs want Commerce to consider such information, however, they are statutorily mandated to share it with other interested parties in antidumping and countervailing duty proceedings. 19 U.S.C. § 1677f(c). Nor is there any allegation, for example, that the Firm or the Attorney has shared or will share business proprietary information with plaintiffs' competitors, or with the public.

Plaintiffs nonetheless rely on the reasoning in *Hyundai Pipe*, arguing that "the revelation of a secret {is} an irrevocable act" and that its allegation of an APO violation creates "sufficient uncertainty . . . to constitute a threat." Pl. Mot. at 30 (quoting *Hyundai Pipe Co. v. U.S. Dep't of*

*Commerce*, 11 C.I.T. 238, 243 (1987)).  Whatever the merits of such reasoning at the time *Hyundai Pipe* was decided, Congress overrode such policy judgments one year later by establishing a statutory scheme that allowed for presumptive access during antidumping and countervailing duty proceedings.  *Omnibus Trade and Competitiveness Act of 1988*, H.R. 4848, 100th Cong. § 1332 (1988), *codified at* 19 U.S.C. § 1677f(c).  Plaintiffs' preference for a different scheme for regulating business proprietary information does not amount to irreparable harm.

V.     The Balance Of Hardships And Public Interest Favor Denial

The last two equitable factors—the balance of the hardships and public interest—likewise weigh in favor of denying plaintiffs' motion.  These two factors for equitable relief "merge when the Government is the opposing party."  *Cf. Nken v. Holder*, 556 U.S. 418, 435 (2009) (addressing public interest and balance of harms in considering a stay).

"An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it is not granted."  *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 959–60 (Fed. Cir. 1984).  That is precisely the case here. Plaintiffs' requested relief would delay the orderly completion of ongoing investigations by Commerce.  Not only would this harm Commerce and the parties appearing in the ongoing investigations, but it would undermine an important statutory scheme.  *See, e.g.*, *Del. River Port Auth. v. Transamerican Trailer Transp., Inc*., 501 F.2d 917 (3d Cir. 1974) (reversing district court's grant of a preliminary injunction when the injunction would "encroach upon {the agency's} statutory responsibility to establish and maintain uniform maritime practices and policies").

If granted, plaintiffs' requested relief would also cause serious harm to defendant-intervenor, the Coalition of Freight Rail Producers, which would be deprived of its chosen counsel and the longstanding relationship and expertise stemming from that relationship. Plus, the Federal Circuit has found that "{a} disqualification order discredits the bar generally and the individual attorneys particularly." *Panduit Corp. v. All States Plastic Mfg. Co*., 744 F.2d 1564, 1576–77 (Fed. Cir. 1984), *disapproved on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) (holding disqualification orders are not immediately appealable). Thus, "judges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect." *Id.* "The opposite effects are just as likely—encouragement of vex{atious} tactics and increased cynicism by the public." *Id.* at 1577. In contrast with these serious harms from granting the preliminary injunction, plaintiffs would suffer no cognizable harm from waiting until the resolution of the agency process to raise their claims in the normal course of a 28 U.S.C. § 1581(c) proceeding.

Finally, plaintiffs' request reflects a disfavored attempt to *change*, rather than maintain, the status quo at the preliminary injunction stage. "The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." *Litton Sys.*, 750 F.2d at 961. "The status quo to be preserved is that state of affairs existing immediately before the filing of the litigation, the last uncontested status which preceded the pending controversy." *Id.* Applying that reasoning, the status quo to be preserved is that the Firm represents the Coalition of Freight Rail Producers, petitioner in the underlying investigations, and, in that role, the Firm has access to business proprietary information submitted in the investigations pursuant to the APO. Plaintiffs seek to disrupt that status quo. Such arguments

26

are disfavored and require a heightened showing to prevail. *See, e.g.*, *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd and remanded*, 546 U.S. 418 (2006) (requiring a "heightened" burden for movant seeking a preliminary injunction that alters the status quo); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (requiring a "clear showing" for a mandatory injunction that would alter the status quo). Plaintiffs cannot satisfy the traditional equitable framework, much less any heightened requirement. Accordingly, plaintiffs' request for a preliminary injunction should be denied.

VII.   <u>USCIT Rule 65(c) Security Is Required</u>

"{T}he court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." R. Ct. Int'l Trade 65(c) (emphasis added). Defendants agree that nominal security would be necessary if the Court were to grant the preliminary injunction, *see* Pl. Mot. at 32, but such security still could not compensate for the serious equitable harms flowing from such an order.

<strong><u>CONCLUSION</u></strong>

For these reasons, we respectfully request that the Court deny plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL

BRISHAILAH BROWN
Attorney
Office of the Chief Counsel for Trade
Enforcement & Compliance
U.S. Department of Commerce

/s/ Emma E. Bond
Emma E. Bond
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Email: Emma.E.Bond@usdoj.gov

November 10, 2022

*Attorneys for Defendants*