IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

AMSTED RAIL COMPANY, INC., ASF-K
DE MEXICO S. DE R.L. DE C.V,

              **Plaintiffs,**

v.

UNITED STATES DEPARTMENT OF
COMMERCE, UNITED STATES
SECRETARY OF COMMERCE GINA M.
RAIMONDO, in her official capacity,

              **Defendants,**
and

COALITION OF FREIGHT COUPLER
PRODUCERS,

              **Defendant-Intervenor.**

Court No. 22-00316
Before: Hon. Gary S. Katzmann


**DEFENDANT-INTERVENOR'S RESPONSE TO
MOTION FOR A PRELIMINARY INJUNCTION**

Daniel B. Pickard, Esq.
Amanda L. Wetzel, Esq.
Claire M. Webster, Esq.

**Buchanan Ingersoll & Rooney PC**
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7000

*Counsel to Coalition of Freight
Coupler Producers*

Dated: November 14, 2022

## <u>TABLE OF CONTENTS</u>

Introduction…………………………………………………………………………1

Factual and Procedural History………………………………………………...2

I.      The Predecessor Investigations……………………………………………2

II.     The Current Investigations……………………………………………...……4

Argument……………………………………………………………………………5

I.      Standard of Review………………………………………………………… 5

II.     Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits……… 6

A.      Plaintiffs Have Failed to Demonstrate that Jurisdiction Lies Under 28 U.S.C. Sec.1581(i)……………………………………………………….……..6

B.      Plaintiffs Have Failed to State a Claim for Relief ……………………… 6

C.      The Uncontested Facts Fail to Demonstrate a Conflict of Interest With a Former Client………………………………………………………………… 8

D.      Commerce's Determination Not to Disqualify the Attorney or Its Firm is Reasonable……………………………………………………………………9

III.    Plaintiffs Have Failed to Demonstrate Immediate, Irreparable Harm Before a Decision Can Be Rendered……………………………………………… 14

IV.     The Balance of Hardships Weighs in Favor of Denial…………………… 16

V.      The Public Interest Weighs in Favor of Denial …………………………… 17

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001)…………..……………………………………………………...5

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959)……………………...……………………………………………………..14

*CannaKorp, Inc. v. United States*,
  234 F. Supp. 3d 1345 (Ct. Int'l Trade 2017)……………..………………….....…………...14

*FCC v. Pottsville Broadcasting Co.*,
  309 U.S. 134 (1940)……………………….……………...…………………………………….9

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981)……………….……………………………………………………15, 16

*GEO Specialty Chemicals, Inc. v. Husisian*,
  951 F. Supp. 2d 32 (D.D.C. 2013)…………………………………………………………...11

*J. Conrad LTD v. United States*,
  457 F. Supp. 3d 1365 (Ct. Int'l Trade 2020)……………………………………...………...5

*Litton Sys., Inc. v. Sundstrand Corp.*,
  750 F.2d 952 (Fed. Cir. 1994)….…………………………………………………….……16, 18

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)………………………………………………………………………16

*Micron Tech., Inc. v. United States*,
  117 F.3d 1386 (Fed. Cir. 1997)……………………………………………………………17

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
  389 F.3d 973 (10th Cir. 2004)………………………………………………………………18

*PSC VSMPO–Avisma Corp. v. United States*,
  688 F.3d 751 (Fed. Cir. 2012)…………………………………………………………...10

*Shenzhen Xinboda Industrial Co. Ltd. v. United States*,
  29 I.T.R.D. 2464, 2017 WL 6502727 (Ct. Int'l Trade Dec. 5, 2017)………...……………10

*Sumecht NA, Inc. v. United States*,
  923 F.3d 1340 (Fed. Cir. 2019)………………………………………….…………………5

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
  60 F.3d 27 (2d Cir. 1995)…………………………………………….…………18
*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978)……………………………………………………………8-10

*Watkins v. Trans Union, LLC*,
  869 F.3d 514 (7th Cir. 2017)…………………………………...…………………..10, 12

**Statutes**

5 U.S.C. § 706(2)(A)……………………………………………………………….6

19 U.S.C. § 1673(1)………………………………………………………………...17

28 U.S.C. § 1581(i)………………………………………………………………..6

**Regulations**

19 C.F.R. § 351.103……………………………………………………………....15

19 C.F.R. § 351.313……………………………………………………….6, 7, 10

19 C.F.R. §§ 354.1–354.19……………………………………………………8, 15

**Rules**

DC Bar Rule 1.9………………………………………………………………….9, 13

USCIT Rule 12(b)(6)……………………………………………………………...6

USCIT Rule 65…………………………………………………………………….1

**Agency Decisions and Guidance**

*Freight Rail Coupler Systems and Components from China*, 86 Fed. Reg. 64,958 (Int'l Trade
Comm'n Nov. 19, 2021)……………………………………………………………..3

*Freight Rail Coupler Systems and Components Thereof: Preliminary Affirmative Countervailing
Duty Determination*, 87 Fed. Reg., 12,662 (Dep't Commerce Mar. 7, 2022)…………………….3

*Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of
China: Final Affirmative Countervailing Duty Determination*, 87 Fed. Reg. 30,869 (Dep't
Commerce May 20, 2022)……………………………………………………………3-4

*Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China: Final Affirmative Determination of Sales at Less-Than-Fair-Value*, 87 Fed. Reg. 32,121 (Dep't Commerce May 27, 2022)……………………………………………………………4

*Freight Rail Coupler Systems and Components Thereof from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less-Than-Fair Value*, 87 Fed. Reg. 14,511 (Dep't Commerce Mar. 15, 2022)……………………………………………………………3

Letter from Faegre Drinker Biddle & Reath to Sec'y Commerce, re: *Certain Freight Rail Couplers and Parts Thereof from China and Mexico: Request to Disqualify and Exclude Petitioner's Counsel from the Administrative Protective Order and Dismiss the Petition*, Case Nos. A-570-145, A-201-857, C-570-146 (Oct. 12, 2022)……………………………………...…………..13

*Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773 (Dep't Commerce Apr. 17, 2013)……..7

*Silicon Metal from the Republic of Kazakhstan: Representation of Tau-Ken Temir LLP by Squire Patton Boggs*, DOC Inv. No. C-834-811 (Dep't of Commerce Oct. 6, 2020)…………………..10

**Bar Association Opinions**

ABA Comm'n on Ethics & Prof'l Responsibility, Formal Opinion 390 (1995)…………………9

## **INTRODUCTION**

Pursuant to Rule 65 of the Rules of this Court and this Court's scheduling order dated November 4, 2022, defendant-intervenor Coalition of Freight Coupler Producers ("CFCP" or the "Coalition") respectfully submits this response in opposition to the motion for a preliminary injunction ("PI") filed by plaintiffs Amsted Rail Company, Inc. ("ARC") and ASF-K Mexico de S. de R.L. de C.V. ("ASF-K") (collectively, "Plaintiffs"), on November 4, 2022. The Coalition notes that, while the Court's scheduling order did not provide a deadline for defendant-intervenor to respond to Plaintiffs motion for a preliminary injunction, the Coalition submits this response in accordance with the deadline for Defendant's response. *See* Order of November 4, 2022, ECF No. 19. To the extent appropriate, the Coalition requests leave of the Court to submit this response.

We respectfully request that the Court reject Plaintiffs' motion. Plaintiffs have failed to establish a likelihood of success on the merits and have not demonstrated that Commerce acted arbitrarily or capriciously, abused its discretion, or acted contrary to the law. Commerce acted reasonably in declining to consider Plaintiffs' request to disqualify the Attorney, and, even if Commerce had reached the merits of Plaintiffs' request to disqualify, there is no actual conflict of interest concerning the mandatory respondent in Commerce's investigation, as it was never a client of the Attorney or the Firm. In addition there was no violation of the Administrative Protective Order ("APO") from the predecessor investigations, nor has any evidence been submitted that is supportive of a breach of said APO. Nor have Plaintiffs demonstrated that they have suffered an injury, much less an injury of any immediacy or magnitude. The balance of the hardships and the public interest also weigh in favor of rejecting Plaintiffs' motion, since issuance of a preliminary injunction would cause severe hardship to the Coalition and would

PUBLIC VERSION

inhibit Commerce from conducting its investigation. Accordingly, we respectfully request that the Court reject Plaintiffs' motion for a preliminary injunction.

**FACTUAL AND PROCEDURAL HISTORY**

**I.     The Predecessor Investigations**

On June 17, 2021, Counsel to CFCP signed an engagement agreement with Amsted Rail Company, Inc. ("ARC"), which did not include representation of ASF-K, regarding potential antidumping and countervailing duty investigations. Compl. ¶ 15.

Specifically, the engagement agreement, attached at **Exhibit 1** provided that:

At the time, Attorney was a partner at Wiley Rein LLP. *See* Compl. ¶¶ 15-17. The engagement agreement also included the following language:

On September 29, 2021, the Coalition filed petitions with the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission ("ITC" or the "Commission") alleging dumping and subsidization of *Freight Rail Coupler Systems and Components from China*. Compl. ¶ 20. At the time, the Coalition included ARC and McConway & Torley, LLC ("McConway"). *See id.* ¶ 21. Two days after the filing of the petitions, ARC

2

Ct. No. 22-00316

withdrew from the Coalition. On October 6, 2021, the Coalition informed Commerce that ARC had withdrawn and would be replaced by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). *See id.* ¶ 24. On October 14, 2022, ARC's current counsel, Faegre Drinker Biddle & Reath LLP ("Faegre") entered an appearance at Commerce on ARC's behalf. *Id.* ¶ 25.

Following ARC's departure from the Coalition, Attorney and its former law firm, Wiley Rein LLP continued representing the Coalition at Commerce and the Commission. On November 15, 2022, the Commission made an affirmative preliminary determination that there was a reasonable indication of material injury as a result of subject imports. *Freight Rail Coupler Systems and Components from China*, 86 Fed. Reg. 64,958 (Int'l Trade Comm'n Nov. 19, 2021). On February 28, 2022, Commerce made a preliminary affirmative countervailing duty determination. *Freight Rail Coupler Systems and Components Thereof: Preliminary Affirmative Countervailing Duty Determination*, 87 Fed. Reg., 12,662 (Dep't Commerce Mar. 7, 2022).

On March 8, 2022, following his departure from Wiley Rein LLP, the Attorney entered an appearance on behalf of the continuing representation of the Coalition at his new law firm, (the "Firm"). *See id.* ¶ 33. On March 8, 2022, Commerce made a preliminary determination of sales at less than fair value. *Freight Rail Coupler Systems and Components Thereof from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less-Than-Fair Value*, 87 Fed. Reg. 14,511 (Dep't Commerce Mar. 15, 2022). On May 2, 2022, the Firm amended its APO application to reflect that the Accountant was working at the Firm. *See* **Exhibit 2**. On May 16, 2022, Commerce made its final affirmative countervailing duty determination. *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 87 Fed. Reg.

Ct. No. 22-00316

30,869 (Dep't Commerce May 20, 2022). On May 23, 2022, Commerce made its final determination of sales at less than fair value. *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China: Final Affirmative Determination of Sales at Less-Than-Fair-Value*, 87 Fed. Reg. 32,121 (Dep't Commerce May 27, 2022).

On June 14, 2022, the Commission announced its negative injury determination, terminating the Predecessor investigations. *See* Compl. ¶ 37. On July 15, 2022, the Firm amended its APO application to add additional personnel, as it had done throughout the representation. *See id.* ¶ 42. The updated APO application was done prior to the time running in which to file an appeal of the ITC's determination and was made out of an abundance of caution as a reflection of the growth of the international trade practice. On September 23, 2022, the Firm certified its destruction of materials covered under the APO. *See id.* ¶ 43.

## II.   The Current Investigations

On September 28, 2022, the Coalition, comprised of McConway and USW, filed the petitions underlying these investigations on *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China. Id.* ¶¶ 44, 46. The petitions included only information provided by McConway or which was otherwise publicly available.  Plaintiffs have not alleged that the petitions included any confidential information obtained from Amsted or any information that was subject to the predecessor APO. Faegre filed an APO application at Commerce on behalf of both ARC and its Mexican affiliate, ASF-K, on October 3, 2022. *See* **Exhibit 3**. On October 12, 2022, Faegre filed a letter with Commerce requesting that counsel to the Coalition be disqualified and excluded from the Administrative Protective Order and that the Petition be dismissed on the grounds that ASF-K was adverse to the Coalition. *See Compl.* ¶ 56.

Ct. No. 22-00316

On October 18, 2022, Commerce informed Faegre that it had considered its request and declined to disqualify the Attorney and the Firm. *Id.* ¶ 64.

On October 31, 2022, the Department notified ASF-K, the Mexican producer, that it was selected as the mandatory respondent and that the Department would be investigating ASF-K to "determine whether merchandise imported into the United States that you are believed to produce and/or export is being sold at less-than-fair-value, i.e., at dumped prices." *See* Letter from Eric B. Greynolds, Program Manager, AD/CVD Operations, Off. III, Enf't & Compl. to Faegre Drinker Biddle & Reath LLP, re: *Less-Than-Fair-Value Investigation of Certain Freight Rail Couplers And Parts Thereof from Mexico: Request for Information* (Oct. 31, 2022), excerpts attached at **Exhibit 4**.  It is uncontested that ASF-K has never been a client of the Attorney or of the Firm.

## ARGUMENT

### I.    Standard of Review

The movant seeking a preliminary injunction carries the burden of persuasion and must prove by a clear showing that this "extraordinary and drastic remedy" is appropriate. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they will suffer irreparable harm absent immediate relief, (3) the balance of interests weighs in favor of relief, and (4) the injunction serves the public interest. *See, e.g.*, *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019).. Further, the movant cannot be granted preliminary relief unless it establishes both that it is likely to succeed on the merits and that it will suffer irreparable harm absent immediate relief. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Plaintiffs have failed to

Ct. No. 22-00316

demonstrate that any of the four factors is likely and consequently denial of the request for a preliminary injunction is warranted.

II.   **Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits**

Plaintiffs have failed to establish a likelihood of success on the merits. The Court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs raise two issues in their complaint: (1) Commerce's refusal to disqualify counsel to CFCP and (2) Commerce's failure to rescind access to Plaintiffs' business proprietary information. *See* Compl. at ¶¶ 68-90. Plaintiffs have not demonstrated that Commerce acted arbitrarily or capriciously, abused its discretion, or acted contrary to the law.

A.   **Plaintiffs Have Failed to Demonstrate that Jurisdiction Lies Under 28 U.S.C. Sec. 1581(i)**

Defendant-Intervenor endorses the arguments made by the Government that plaintiffs have not demonstrated that the Court possesses jurisdiction pursuant to the Court's residual jurisdiction in 28 U.S.C. § 1581(i) or the Court's equitable authority to grant mandamus relief. *See generally* Def. Mot. to Dismiss at 11-21, ECF No. 25. Because this Court does not possess jurisdiction to adjudicate plaintiffs' claims, it should dismiss the complaint and deny all pending motions as moot. For the sake of conciseness, those arguments will not be duplicated in Defendant-Intervenor's response.

B.   **Plaintiffs Have Failed to State a Claim for Relief**

As will be further demonstrated in Defendant-Intervenor's forthcoming Motion to Dismiss, and pursuant to Rule 12(b)(6), Plaintiffs' complaint should be dismissed for failure to state a claim. In essence, Plaintiffs are requesting relief for Commerce's decision not to apply the District of Columbia Bar Association's ("DC Bar") Rules of Professional Conduct. However, it

Ct. No. 22-00316

is the DC Bar that has jurisdiction over issues arising under the DC Bar rules. Commerce's regulations regarding attorneys and non-attorney representatives are found at 19 C.F.R. § 351.313. This regulation includes provisions regarding the suspension or debarment from practicing before the Department, and the authority to impose sanctions as the Secretary deems appropriate. However, the preamble of 19 C.F.R. § 351.313 provides that Commerce generally will not adjudicate matters of attorney professional responsibility in which the agency is not an expert, such as conflicts of interest. *See Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773, 22,775 (Dep't Commerce Apr. 17, 2013).

The preamble does include illustrative examples of the types of improper activity that could warrant sanctions and/or debarment, including: knowingly providing incorrect information to the agency, knowingly making misrepresentations of fact or law, knowingly making false accusations in a proceeding, failing to engage in reasonable diligence including failure to exercise such diligence in the preparation and/or review of submissions, and assisting an attorney or non-attorney representative who has been suspended or disbarred from practicing before the Department during such disbarment or suspension to work on matters pending before the agency. Plaintiffs, however, have not alleged before the Department any improper activity as contemplated in the preamble. Rather, they have chosen to make an allegation based almost entirely upon a set of rules that are not within the Department's competency or jurisdiction.

As Plaintiffs' core request for relief is anchored in an alleged violation of Rule 1.9 of the DC Bar, a rule over which Commerce does not exercise jurisdiction, Plaintiffs have failed to state a cognizable claim for relief. Plaintiffs also have not challenged the validity of 19 C.F.R. § 351.313 and thus have failed to state a claim for relief.

7

Ct. No. 22-00316

In regard to the unsubstantiated and unsupported APO allegation, Commerce has referred the matter to its APO Unit. *See* Letter from Erin Begnal, Director, AD/CVD Operations, Off. III, Enf't & Compl. to Faegre Drinker Biddle & Reath LLP, re: *Certain Freight Rail Couplers and Parts Thereof from China and Mexico: Response to Request to Disqualify and Exclude Petitioner's Counsel from the Administrative Protective Order* (Oct. 18, 2022), attached at **Exhibit 5**. Commerce reasonably complied with its regulations providing for referral, investigation, and reporting of alleged APO violations. *See* 19 C.F.R. §§ 354.1–354.19. No decision has yet been rendered and, accordingly, this claim is not ripe. Moreover, Supreme Court precedent makes clear that agencies generally must be free to fashion their own rules of procedure, and here, the Court must defer to Commerce's reasonable application of its regulations governing the submission of information during antidumping and countervailing duty proceedings. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978). Because Plaintiffs fail to allege any cognizable claim in regard to Commerce's deliberations, they have failed to meet their burden of proving a likelihood of success on the merits.

### C. The Uncontested Facts Fail to Demonstrate a Conflict of Interest With a Former Client

Plaintiffs have failed to allege facts, even if considered true, that would demonstrate a conflict of interest. Such failure to plead facts sufficient to substantiate a claim further confirms the absence of a likelihood of success on the merits. Indeed, three facts appear to be uncontested: (1) ASF-K was never a client of the Attorney or the Firm; (2) ASF-K is the mandatory respondent (*i.e.*, the adverse party) in the Commerce's investigation; and (3) a lawyer who represents a corporate client is not typically barred from a representation that is adverse to a

8

Ct. No. 22-00316

corporate affiliate of that client in a different matter. *See* DC Bar Rule 1.9; *see also* ABA

Comm'n on Ethics & Prof'l Responsibility, Formal Opinion 390 (1995).

[

], [

]." *See* **Exhibit 1**.

As ASF-K is the mandatory respondent in the Department's investigation, but as ASF-K

was never a client of the attorney or the Firm, no conflict exists. Accordingly, Plaintiff cannot

demonstrate a likelihood of success on the merits.

> ### D.   Commerce's Determination Not to Disqualify the Attorney or Its Firm is Reasonable

Commerce's determination not to disqualify counsel or its firm is not arbitrary or

capricious, an abuse of discretion, or otherwise not in accordance with the law. Plaintiffs claim

that Commerce did not reasonably explain its decision to deny Plaintiffs' request to disqualify

counsel on the basis that it has no authority to adjudicate ethical violations. Compl. at ¶¶ 72-73.

However, substantial law directly contradicts this claim.

Administrative agencies have broad latitude to "fashion their own rules of procedure."

*See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978);

*see also FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143 (1940). The Court of Appeals for

Ct. No. 22-00316

the Federal Circuit and this Court have both recognized this right. *See PSC VSMPO–Avisma Corp. v. United States*, 688 F.3d 751, 760-61 (Fed. Cir. 2012) (citing *Vt. Yankee*, 435 U.S. at 543); *Shenzhen Xinboda Industrial Co. Ltd. v. United States*, 29 I.T.R.D. 2464, 2017 WL 6502727 at *4 n.11 (Ct. Int'l Trade Dec. 5, 2017). In requesting to disqualify counsel, Plaintiffs claimed that Commerce had the ability to suspend or bar attorneys from practicing before it. *See* **Exhibit 5**; *see also* 19 C.F.R. § 351.313. However, Commerce reasonably stated that this request was at odds with the regulatory preamble for 19 C.F.R. § 351.313, which states that Commerce will not consider ethical conflicts within the province of local Bar authorities. *See id.* Accordingly, Commerce acted according to its regulations in not disqualifying counsel, and its decision was not arbitrary or capricious. Indeed, Commerce's decision not to disqualify the Attorney is prudent. A decision to disqualify an attorney has the potential to delay and derail an ongoing proceeding, and often carries, "'immediate, severe, and often irreparable consequences' for the party and the disqualified attorney." *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 719 (7th Cir. 1982).

In support of the claim that it is Commerce's province to determine whether disqualification is appropriate, Plaintiffs cite a letter from Commerce's investigation into *Silicon Metal from the Republic of Kazakhstan*. *See* Application/Motion for Prelim. Injunction and for Expedited Briefing at 26-27, ECF No. 17. In that case, the petitioner requested that a respondent's counsel be disqualified because respondent's counsel had represented the petitioner's parent company in a prior investigation of silicon metal exports from Kazakhstan. *See Silicon Metal from the Republic of Kazakhstan: Representation of Tau-Ken Temir LLP by Squire Patton Boggs*, DOC Inv. No. C-834-811 (Dep't of Commerce Oct. 6, 2020) at 1. After a

10

brief discussion of the merits, Commerce declined to disqualify respondent's counsel because petitioner had not demonstrated how respondent's counsel's knowledge from the prior representation was relevant. That Commerce addressed the merits of a disqualification argument in a separate case and did not do so here does not indicate that Commerce is required to address the merits of disqualification arguments. In fact, Commerce's regulations do not oblige it to undertake ethical investigations under Bar rules. Commerce's decision not to disqualify does not leave Plaintiffs without relief. If they so choose, they could report the alleged professional misconduct to the District of Columbia Bar. *GEO Specialty Chemicals, Inc. v. Husisian*, 951 F. Supp. 2d 32, 37 (D.D.C. 2013). They have not done so.

In addition, and as the Court is aware, in the current matter there is an explicit waiver of conflicts and an agreement not to seek disqualification in a joint representation of a coalition. In order to retain counsel, ARC (who is not the subject of Commerce's investigation here) expressly agreed [                                        ]. To be clear, not only did ARC

[

                    ]. Moreover, [

                              ]. The suggestion that the written consent previously provided by Amsted to Wiley Rein does not apply to [              ], "due to his change of firms, has no basis in either the rules of ethics or substantive law. The ethics rules are rules of reason. See, ABA Model Rules, Scope at [      ]. The documents here show that [              ] was clearly both the intended and actual beneficiary of the consent, as the primary attorney actively involved in the matter which was covered by the waiver agreement, and [              ] subsequent

11

move to a different law firm has no relevance to its continuing vitality." Affidavit of Prof. Michael Frisch, attached at **Exhibit 6.** Specifically, the potential conflict arising from the work performed by counsel was waived and cannot now be imputed to counsel's new firm. [



]. However, contrary to ARC's explicit, written obligation [

], this is exactly what it is doing here. ARC is asserting a conflict that it previously waived [                                                               ]. This is nothing more than a litigation tactic, and the Court should not reward ARC for its behavior.

Plaintiffs claim that the conflict is nonconsentable because the predecessor investigations and these investigations are "substantially related." *See* Application/Motion for Prelim. Injunction and for Expedited Briefing at 21. However, that two investigations involve the same statutory scheme and similar facts does not demonstrate that the two cases are substantially related. In *Watkins v. Trans Union, LLC*, the Court of Appeals for the Seventh Circuit declined to disqualify counsel to Watkins in a Federal Credit Reporting Act ("FCRA") case against Trans Union, even though Watkins's counsel had previously represented Trans Union in FCRA cases while at a different law firm. 869 F.3d at 520-21. The Court found that the present and prior cases were different transactions and that there was no substantial risk of Watkins's counsel using confidential information. *Id.* at 521-23. Similarly, here, the predecessor investigations and the current investigations are different cases. While they both involve the dumping and subsidization of freight rail couplers, the prior investigation included a broader scope than the current investigation and only covered merchandise imported from China, and the current investigation covers merchandise imported from both China and Mexico. Indeed, the difference

Ct. No. 22-00316

between the two investigations is the genesis of Plaintiffs' complaint. Further, CFCP's counsel destroyed its APO materials from the prior investigation prior to the filing of this case, and Plaintiffs have pointed to no actual breach of the APO or of attorney-client privilege. Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on the merits.

More fatal to Plaintiff's claim that the waiver was invalid due to it allegedly being "nonconsentable" is the actual language of Rule 1.9 and its accompanying comments. Specifically, Comment 4 to Rule 1.9 explicitly confirms that such conflicts are indeed waivable ("Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.")

Additionally, a critical portion of Faegre's request to enjoin Commerce from releasing information under the administrative protective order was that allegedly a violation of the previous administrative protective order had occurred. ARC and its counsel made the serious allegation in a public forum. *See* Letter from Faegre Drinker Biddle & Reath to Sec'y Commerce, re: *Certain Freight Rail Couplers and Parts Thereof from China and Mexico: Request to Disqualify and Exclude Petitioner's Counsel from the Administrative Protective Order and Dismiss the Petition*, Case Nos. A-570-145, A-201-857, C-570-146 (Oct. 12, 2022). Faegre made this allegation to both Commerce and the Commission in its underlying investigations, however it did not assert, and has not asserted, any facts that demonstrate that a breach of the APO had actually occurred. Nor could they, as no breach did in fact occur.

Plaintiffs, in seeking to limit information releasable in the current investigation, anchored their claim in large part on a completely unsupported allegation of a previous APO breach, with no reference to any evidence, and a bald assertion that APO material could have been used

13

Ct. No. 22-00316

inappropriately to "springboard" the current investigation. As a result, Petitioner's counsel has been accused of professional misconduct, which has triggered additional public filings echoing a baseless and totally unsupported allegation.

### III.   Plaintiffs Have Failed to Demonstrate Immediate, Irreparable Harm Before a Decision Can Be Rendered

In evaluating irreparable harm, the Court considers "the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief." *CannaKorp, Inc. v. United States*, 234 F. Supp. 3d 1345, 1350 (Ct. Int'l Trade 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). Here, Plaintiffs have not suffered an injury, much less an injury of any magnitude or immediacy. As discussed in Section II, *supra*, Plaintiffs have not identified any actual breach of the APO in the predecessor investigations, nor have they claimed that an injury resulted from counsel's previous representation of an affiliated corporate entity. Moreover, and as discussed further below, the Department of Commerce has established and administers adequate safeguards to ensure that no irreparable harm is incurred.

Plaintiffs allege that their injury is the so-called "ongoing ethical violation." Application/Motion for Prelim. Injunction and for Expedited Briefing at 29. However, the request for a preliminary injunction is limited to the release of information under the Department's APO and it is not at all clear how the grant (or denial) of their motion protects Plaintiff from an irreparable harm.  Nor have Plaintiffs pointed to any specific information that CFCP allegedly used resulting in any harm. Plaintiffs essentially claim that one cannot unring the injury bell. *See* Application/Motion for Prelim. Injunction and for Expedited Briefing at 29-

14

Ct. No. 22-00316

30. In fact, the bell has not been rung at all, and Plaintiffs have not specified any information to prove otherwise.

Moreover, the Department of Commerce has well established authorities to issue and enforce administrative protective orders sufficient to prevent any irreparable harm from occurring. *See* 19 C.F.R. §§ 351.103, 354.3. Commerce's regulations provide for remedies, including sanctions, for the violation of APOs. 19 C.F.R. § 354.3(b). Defendant-Intervenor has submitted its APO application to Commerce, which includes the agreement to be bound by the terms of the Order: "Recognizing the penalties for perjury under the laws of the United States, I affirm that all statements in this application are true, accurate, and complete to the best of my knowledge. I agree, individually and on behalf of my law firm, corporate law office, or company, if any, to be bound by the terms stated in the administrative protective order issued in this segment of the proceeding." *See* **Exhibit 7**. Defendant-Intervenor's APO application has been granted and the Department has the ability to administer and enforce such APO to ensure the protection of all information covered by the APO and consequently plaintiffs have failed to demonstrate immediate and irreparable harm.

Lastly, and in regard to Supreme Court precedent, Defendant-Intervenor echoes the argument of the Government in regard to the fact that it has been settled law for several decades that mere disagreement with a lower tribunals' decision not to disqualify counsel does not cause irreparable harm. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376 (1981). In *Firestone Tire*, the Supreme Court rejected a claim of irreparable harm, explaining that "petitioner fails to supply a single concrete example of the indelible stamp or taint of which it warns." *Id.* The nature of disqualification motions, moreover, meant that "{t}he propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact

15

Ct. No. 22-00316

on the underlying litigation may be evaluated, which is normally only after final judgment." *Id.* at 377. "The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case . . . , and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* As the Government's papers indicate, consistent with *Firestone Tire*, Plaintiffs here make broad claims regarding the harm flowing from the alleged conflict of interest, but fail to "supply a single concrete example" of the alleged harm. *See id.* at 376. For these reasons as well, Plaintiff has failed to demonstrate immediate and irreparable harm justifying the "extraordinary and drastic remedy" of a preliminary injunction is appropriate. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Accordingly, Plaintiffs have failed to demonstrate that they have suffered an injury, much less an injury of magnitude or immediacy. Moreover, the Department of Commerce has well established authorities to issue and enforce administrative protective orders sufficient to prevent any irreparable harm from occurring.

## IV.    **The Balance of Hardships Weighs in Favor of Denial**

The balance of hardships weighs in favor of denying Plaintiffs' motion for a preliminary injunction. "An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it is not granted." *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 959-60 (Fed. Cir. 1994). Indeed, it is the Coalition, not Plaintiffs, that would be prejudiced as a result of the issuance of a preliminary injunction. In an investigation that is less than two months old, the Coalition and its counsel have weathered a baseless allegation of an [                    ] and attempts to disqualify counsel to the coalition [                                        ]. More importantly, however, granting of the

16

preliminary injunction would prevent the Coalition from the receipt of full and effective legal counsel. While Plaintiffs have made speculative and supported claims of potential harm, the harm to Defendant-Intervenor would be immediate and significant. Specifically, granting of the injunction would result in a lack of access by counsel to the proprietary record (in contravention of the statutory scheme for APOs), preventing Defendant-Intervenor from effective assistance of counsel. Indeed, any such injunction would frustrate the ability of the Coalition to comment on evidence, develop strategy, or submit argument to the Department in regard to its petition for relief against unfairly priced imports. A balancing of Plaintiffs' asserted, theoretical, and unsubstantiated claim versus the real, immediate, and significant harm to the Coalition supports a denial of the request for a preliminary injunction.

## V.      **The Public Interest Weighs in Favor of Denial**

Finally, the public interest weighs in favor of denial of Plaintiffs' motion for a preliminary injunction. Congress gave the Department of Commerce the authority to conduct antidumping duty investigations to determine whether merchandise is being sold at less-than-fair-value in the United States. *See* 19 U.S.C. § 1673(1). The courts have appropriately afforded Commerce "broad discretion" with regard to the conduct of investigations. *See Micron Tech., Inc. v. United States*, 117 F.3d 1386 (Fed. Cir. 1997). It is in the public interest for the Court to let this investigation proceed unimpeded and deny Plaintiffs' motion for a preliminary injunction.

In addition, and as noted by the Government, plaintiffs' request reflects a disfavored attempt to change, rather than maintain, the status quo at the preliminary injunction stage. "The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." *Litton Sys.*, 750 F.2d at 961. "The status quo to be preserved is that

17

state of affairs existing immediately before the filing of the litigation, the last uncontested status which preceded the pending controversy." *Id.* Applying that reasoning, the status quo to be preserved is that the Firm represents the Coalition of Freight Rail Producers, petitioner in the underlying investigations, and, in that role, the Firm has access to business proprietary information submitted in the investigations pursuant to the APO. Plaintiffs seek to disrupt that status quo. Such arguments are disfavored and require a heightened showing to prevail. *See, e.g.*, *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd and remanded*, 546 U.S. 418 (2006) (requiring a "heightened" burden for movant seeking a preliminary injunction that alters the status quo); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (requiring a "clear showing" for a mandatory injunction that would alter the status quo).

Lastly, there is substantial evidence that indicates that (1) the allegation of a breach of an Administrative Protective Order was made wholly devoid of any evidence to support such a serious charge and (2) a conflict of interest allegation was made to an agency with no jurisdiction over such charges, in the absence of any actual conflict with a former client, but with an explicit agreement not to seek disqualification, and "consistent with established principles of ethics, the very nature of the joint representation fatally undermines any attempt at disqualification on the bases alleged here." *See* **Exhibit 6**. There is a clear public interest in not tolerating abuses of the litigation process. Under such circumstances as exist here, courts have long been justifiably loath to grant disqualification and as the ABA Model Rules make clear, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. *See* **Exhibit 6**. Accordingly, the public interest also supports a denial of the requested injunction.

Ct. No. 22-00316

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

<u>/s/ Daniel B. Pickard</u>
Daniel B. Pickard, Esq.
Amanda L. Wetzel, Esq.
Claire M. Webster, Esq.

**Buchanan Ingersoll & Rooney PC**
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7000

*Counsel to Coalition of Freight Coupler Producers*

Dated: November 14, 2022