**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., and ASF-K DE MEXICO S. DE R.I. DE C.V., )<br><br>Plaintiffs, )<br><br>v. )<br><br>U.S. DEPARTMENT OF COMMERCE, U.S. SECRETARY OF COMMERCE GINA M. RAIMONDO, in her official capacity, and UNITED STATES, )<br><br>Defendants, )<br><br>and )<br><br>COALITION OF FREIGHT RAIL PRODUCERS, )<br><br>Defendant-Intervenor. ) | Court No. 22-00316 |

<u>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Assistant Director
OF COUNSEL:                                    EMMA E. BOND
                                                         Trial Attorney
BRISHAILAH BROWN                     U.S. Department of Justice, Civil Division
Attorney                                           P.O. Box 480, Ben Franklin Station
Office of the Chief Counsel for Trade   Washington, D.C. 20044
Enforcement & Compliance             Tel: (202) 305-2034
U.S. Department of Commerce        Email: Emma.E.Bond@usdoj.gov

November 23, 2022                          *Attorneys for Defendants*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

I.     The Court Does Not Possess Jurisdiction Pursuant To 28 U.S.C. § 1581(i).................... 4

      A.    Strict Limits On Section 1581(i) Jurisdiction Bar Plaintiffs' Interlocutory
           Challenge To Preliminary Administrative Decisions By Commerce.................... 4

      B.    Plaintiffs' Conflict-Of-Interest Allegations Do Not Support Section
           1581(i) Jurisdiction ............................................................................................. 9

      C.    The Alleged APO Violation Does Not Support Section 1581(i) Jurisdiction...... 11

II.    In The Alternative, Plaintiffs Fail To State A Claim For Relief ..................................... 15

      A.    Plaintiffs' Conflict-Of-Interest Allegations Fail To State A Claim ................... 15

      B.    Plaintiffs' Allegations Of An APO Violation Fail To State A Claim
           ............................................................................................................................ 19

III.   The Amended Complaint Should Be Dismissed............................................................. 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ammex, Inc. v. United States*,
   23 CIT 549, 62 F. Supp. 2d 1148 (1999) ............................................................... 19

*Amsted v. Int'l Trade Comm'n*,
   Slip Op. 22-124, 2022 WL 16959404 (Ct. Int'l Trade Nov. 15, 2022) ......................... passim

*ARP Materials, Inc. v. United States*,
   47 F.4th 1370 (Fed. Cir. 2022) ........................................................................... 12

*Banks v. United States*,
   741 F.3d 1268 (Fed. Cir. 2014) .......................................................................... 10

*Bebitz Flanges Works Priv. Ltd. v. United States*,
   433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) ...................................................... 17

*Camp v. Herzog*,
   104 F. Supp. 134 (D.D.C 1952) .......................................................................... 17

*Camp v. Pitts*,
   411 U.S. 138, 142 (1973) .................................................................................... 20

*Chugach Elec. v. U.S. Dist. Ct. Alaska*,
   370 F.2d 441 (9th Cir. 1966) ............................................................................. 10

*Dynamic 3D Geosolutions LLC v. Schlumberger Ltd. (Schlumberger N.V.)*,
   837 F.3d 1280, 1285-87 (Fed. Cir. 2016) ........................................................ 9, 16

*Emle Indus., Inc. v. Patentex, Inc.*,
   478 F.2d 562 (2d Cir. 1973) .............................................................................. 10

*Erwin Hymer Grp. N. Am. v. United States*,
   930 F.3d 1370 (Fed. Cir. 2019) ...................................................................... 4, 12

*EZ Paintr Corp. v. Padco, Inc.*,
   746 F.2d 1459 (Fed. Cir. 1984) ...................................................................... 9, 10

*Firestone Tire & Rubber Co. v. Risjord*,
   449 U.S. 368 (1981) ..................................................................................... passim

*Florida Power & Light Co. v. Lorion*,
   470 U.S. 729, 743-44 (1985) .............................................................................. 20

*GEO Specialty Chems., Inc. v. Husisian*,
  951 F. Supp. 2d 32 (D.D.C. 2013) ............................................................... 7

*Goldsmith v. U.S. Bd. of Tax Appeals*,
  270 U.S. 117 (1926) .............................................................................. 18, 19

*Hyundai Pipe Co. v. U.S. Dep't of Commerce*,
  11 CIT 238 (1987) .......................................................................... 2, 12, 13

*In re Am. Airlines, Inc.*,
  972 F.2d 605 (5th Cir. 1992) ........................................................... 7, 8, 16

*In re Section 301 Cases*,
  570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ............................................. 19

*In re Vivant, Inc.*,
  14 F.4th 1342 (Fed. Cir. 2021) .................................................................. 18

*Juancheng Kangtai Chem. Co. v. United States*,
  932 F.3d 1321 (Fed. Cir. 2019) ............................................................ 5, 10

*Kearns v. Fred Lavery Porsche Audi Co.*,
  745 F.2d 600, 602 (Fed. Cir. 1984)) ........................................................... 9

*Koden v. U.S. Dep't of Just.*,
  564 F.2d 228 (7th Cir. 1977) .................................................................... 18

*Koyo Seiko Co. v. United States*,
  13 CIT 461, 715 F. Supp. 1097 (1989) ........................................................ 7

*LaSalle Nat. Bank v. Lake Cnty.*,
  703 F.2d 252 (7th Cir. 1983) .................................................................... 11

*Makita Corp. v. United States*,
  17 CIT 240, 819 F. Supp. 1099 (1993) .................................................. 2, 10

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) .................................................................................... 4

*Miller & Co. v. United States*,
  824 F.2d 961, 964 (Fed. Cir. 1987) ...................................................... 4, 13

*Norcal/Crosetti Foods, Inc. v. United States*,
  963 F.2d 356 (Fed. Cir. 1992) .................................................................... 5

*Norman G. Jensen, Inc. v. United States*,
    687 F.3d 1325 (Fed. Cir. 2012)................................................................5

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995)...............................................................17

*Panduit Corp. v. All States Plastic Mfg. Co.*,
    744 F.2d 1564 (Fed. Cir. 1984)................................................................9

*Papierfabrik Aug. Koehler SE v. United States*,
    953 F. Supp. 2d 1348 (Ct. Int'l Trade 2014)........................................14

*Parkdale Int'l, Ltd. v. United States*,
    31 CIT 720, 491 F. Supp. 2d 1261 (2007)..............................................4

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012)...............................................................16

*Reynolds v. Army & Air Force Exch. Serv.*,
    846 F.2d 746 (Fed. Cir. 1988)...............................................................10

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985).................................................................................9

*Sacilor, Acieries et Laminoirs de Lorraine v. United States*,
    3 CIT 191, 542 F. Supp. 1020 (1982)....................................................12

*Shakeproof Indus. Prods. Div. of Ill. Tool Works Inc. v. United States*,
    104 F.3d 1309 (Fed. Cir. 1997)..............................................5, 6, 14, 18

*Sicignano v. United States*,
    127 F. Supp. 2d 325 (D. Conn. 2001)...................................................17

*SNR Roulements v. United States*,
    13 CIT 1, 704 F. Supp. 1103 (1989)................................................12, 13

*Sunpreme, Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018)...................................................5, 10, 12

*Touche Ross & Co. v. SEC*,
    609 F.2d 570 (2d Cir. 1979)...........................................................12, 18

*Unified Sewerage Agency of Wash. Cnty., Or. v. Jelco Inc.*,
    646 F.2d 1339 (1981).........................................................................7, 8

*United States v. Miller*,
   624 F.2d 1198 (3d Cir. 1980)...........................................................................16

*United States v. Prevezon Holdings Ltd.*,
   839 F.3d 227 (2d Cir. 2016) .............................................................................9

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978)........................................................................................16

*Wanxiang Am. Corp. v. United States*,
   12 F.4th 1369 (Fed. Cir. 2021)........................................................................12

**Statutes**

5 U.S.C. § 706(2)(A) ...........................................................................................16

19 U.S.C. § 1671a ..................................................................................................5

19 U.S.C. § 1671b ..................................................................................................5

19 U.S.C. § 1671d ..................................................................................................5

19 U.S.C. § 1673a ..................................................................................................5

19 U.S.C. § 1673b ..................................................................................................5

19 U.S.C. § 1673d ..................................................................................................5

19 U.S.C. § 1677f ...........................................................................................passim

28 U.S.C. § 1581 ............................................................................................passim

28 U.S.C. § 1585 ....................................................................................................2

28 U.S.C. § 2643 ....................................................................................................2

28 U.S.C. § 1361 ....................................................................................................2

Omnibus Trade and Competitiveness Act of 1988,
   Pub. L. No. 100–418, 102 Stat. 1107 (Aug. 23, 1988).....................................12

Customs & Trade Act of 1990,
   Pub. L. No. 101-382, 104 Stat. 629 ............................................................12, 13

## **Regulations**

19 C.F.R. §§ 351.301-351.309 ........................................................................ 5

19 C.F.R. §§ 351.304-306 ......................................................................... 12, 13

19 C.F.R. § 351.313 .................................................................................. 16, 18

19 C.F.R. § 353.30 (1988) ............................................................................... 13

19 C.F.R. §§ 354.1-19 ...................................................................................... 3

19 C.F.R. § 354.17 ................................................................................... 12, 14

19 C.F.R. § 354.5 ............................................................................................ 5

## **Other Authorities**

*Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives
    Appearing Before the Department,*
    78 Fed. Reg. 22,773-02 (Dep't of Commerce Apr. 17, 2013) ........................16, 18

*Ripe Olives From Spain,*
    86 Fed. Reg. 35,068-01 (Dep't of Commerce July 1, 2021) (Final Results of Antidumping
    Duty Administrative Review 2018-2019, and Issues and Decision Mem., 86 ITADOC 35,068
    (July 25, 2021)) ......................................................................................... 16

S. Rep. No. 103-412 (1994) .......................................................................13, 14

H.R. Rep. No. 96-1235 (1980) ......................................................................... 4

H.R. Rep. No. 103-826 (1994) ........................................................................ 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., and ASF-K DE MEXICO S. DE R.I. DE C.V., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| U.S. DEPARTMENT OF COMMERCE, U.S. SECRETARY OF COMMERCE GINA M. RAIMONDO, in her official capacity, and UNITED STATES, ) ) ) ) ) | Court No. 22-00316 |
| Defendants, ) ) | |
| and ) ) | |
| COALITION OF FREIGHT RAIL PRODUCERS, ) ) ) | |
| Defendant-Intervenor. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

This Court correctly dismissed the companion case in *Amsted Rail Co., Inc. v. International Trade Commission*, holding the plaintiffs failed to demonstrate that jurisdiction pursuant to 28 U.S.C. § 1581(c) would be "manifestly inadequate," and that jurisdiction was therefore not available pursuant to 28 U.S.C. § 1581(i).  *Amsted v. Int'l Trade Comm'n*, Slip Op. 22-124, 2022 WL 16959404 (Ct. Int'l Trade Nov. 15, 2022) (Slip Op.).  The same reasoning requires dismissal in this case, in which plaintiffs Amsted Rail Company, Inc. (Amsted), and ASF-K de Mexico S. de R.I. de C.V. (ASF-K), raise nearly identical claims as in the companion case.  In their opposition to the Government's motion to dismiss, plaintiffs fail to rebut the

statutory language, legislative history, and Federal Circuit precedent strictly limiting section 1581(i) jurisdiction.

Instead, Plaintiffs attempt to establish "manifest inadequacy" based on the purported "taint" of the claimed conflict-of-interest violation. They cannot, however, overcome the reasoning in the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981), explaining that parties suffer no irreparable harm from waiting until final judgment to appeal decisions denying disqualification. This Court correctly found *Firestone*'s reasoning "persuasive in counseling against interlocutory appeals of attorney disqualification denials." Slip Op. at 27.

In attempting to wave away the weight of authority requiring dismissal, plaintiffs rely on two decades-old, outlier cases, Pl. Opp. at 2, 15-24 (citing *Makita Corp. v. United States*, 17 CIT 240, 819 F. Supp. 1099 (1993), *Hyundai Pipe Co. v. U.S. Dep't of Commerce*, 11 CIT 238 (1987)). The Court has recognized that these cases are not binding precedent. Slip Op at 23 n.12. Nevertheless, in the International Trade Commission (ITC) case, the Court carefully parsed each of these cases and distinguished them on their facts. Slip Op. at 23-27. On appeal, plaintiffs disagree at length with the Court's reasoning with respect to *Makita*. *See* Pl. Opp. at 15-24. Ultimately, however, *Makita* and *Hyundai Pipe* simply are not persuasive authority, particularly in light of the subsequent statutory changes and Federal Circuit decisions since they were decided. As the Court recognized, *Makati* and *Hyundai Pipe* "may not be read so broadly as to outweigh" the language and legislative history of section 1581(i), Federal Circuit precedent interpreting section 1581(i) jurisdiction, and Supreme Court authority restricting interlocutory appeals in similar situations. Slip Op. at 30.

The Court, further, correctly held that plaintiffs had not demonstrated entitlement to alternative sources of jurisdiction, including 28 U.S.C. §§ 1585, 2643(c)(1), and 1361.  Slip Op. 30-32.  Plaintiffs offer no response on this point, and the Court's reasoning in the ITC case applies equally in this case.  Accordingly, this Court should dismiss the case pursuant to Rule 12(b)(1) for lack of jurisdiction.

In the alternative, plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief pursuant to the Administrative Procedures Act (APA) standard of review.  Plaintiffs have not plausibly alleged that Commerce acted arbitrarily and capriciously in declining to immediately disqualify the Attorney and the Firm from the case or from the administrative protective order (APO).  As demonstrated in a consistent line of authority, agencies possess substantial authority and discretion in regulating representatives appearing before them in an investigative or adjudicative capacity.  Even taking all allegations as true, plaintiffs have not demonstrated that Commerce acted arbitrarily or capriciously, or otherwise contrary to law, in declining to take the extreme step of immediately disqualifying the chosen counsel of an interested party.

Plaintiffs' allegations with respect to the APO violation likewise fail to state a claim under the APA standard of review.  Far from violating the law, Commerce reasonably applied the detailed statutory scheme, 19 U.S.C. § 1677f, and its own implementing regulations, *see* 19 C.F.R. §§ 354.1-19.  In opposition, plaintiffs rest on *Hyundai Pipe*, a case that has been superseded by the current statutory and regulatory scheme.  Notably, moreover, plaintiffs fail to defend their original theory that Commerce's decision not to immediately exclude the Firm from the APO violates due process.  As demonstrated in the motion to dismiss, therefore, plaintiffs APO claims should be dismissed.

Finally, after filing their opposition to the plaintiffs' motion to dismiss, plaintiffs filed an amended complaint. Am. Comp., ECF Nos. 35-36 (Nov. 18, 2022). Nothing in the amended complaint, however, alters the fundamental deficiencies in the original complaint. Instead, the amended complaint simply inserts new factual matter that was neither submitted to, nor considered by, the agency, in violation of the APA standard of review.

## ARGUMENT

I.   The Court Does Not Possess Jurisdiction Pursuant To 28 U.S.C. § 1581(i)

A.   Strict Limits On Section 1581(i) Jurisdiction Bar Plaintiffs' Interlocutory Challenge To Preliminary Administrative Decisions By Commerce

Plaintiffs fail to overcome the binding authority that imposes strict limits on jurisdiction pursuant to 28 U.S.C. § 1581(i). *See* Pl. Opp. at 15-19, 24. By its own terms, section 1581(i) "shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable" by this Court pursuant to section 1581(c). 28 U.S.C. § 1581(i)(2)(A). As the Court explained, legislative history confirms that such determinations reviewable pursuant to section 1581(c) include "preliminary administrative action." Slip Op. at 29 (quoting H.R. Rep. No. 96-1235, at 48 (1980)); *see also Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) ("Under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, the procedural correctness of a countervailing duty determination, as well as its merits, are subject to judicial review").

Plaintiffs attempt to rebut this authority by arguing, generally, that section 1581(i) provides "broad residual jurisdiction." Pl. Opp. 23 (citing *Parkdale Int'l, Ltd. v. United States*, 31 CIT 720, 491 F. Supp. 2d 1262, 1267 (2007)).[11] Yet the Federal Circuit has made very clear

---

[11]   Plaintiffs also make the circular argument that courts have an "unflagging obligation to exercise the jurisdiction given them." Pl. Opp. at 23 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). Here, however, the Court has not been "given" section 1581(i) jurisdiction

that section 1581(i)'s "scope is strictly limited" to avoid threats to the "specific grants of jurisdiction contained within the other subsections.'" *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374-75 (Fed. Cir. 2019) (quoting *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012)). Such limits "are necessary to 'preserve[ ] the congressionally mandated procedures and safeguards provided in the other subsections [of section 1581],'" including section 1581(c). *See id.* (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)). For this reason, plaintiffs may invoke section 1581(i) only if another source of section 1581 is "manifestly inadequate." *Id.*

The "manifestly inadequate" standard has been strictly construed with an eye to protecting the broader statutory scheme for antidumping and countervailing duty proceedings. *See* Mot. to Dismiss at 11-20 (citing, *e.g.*, *Sunpreme, Inc. v. United States*, 892 F.3d 1186 (Fed. Cir. 2018); *Juancheng Kangtai Chem. Co. v. United States*, 932 F.3d 1321 (Fed. Cir. 2019)). Allowing the case to proceed would threaten this scheme by hampering Commerce's ability to comply with the tight timelines imposed by statute, and contravening Congress's detailed instructions for business proprietary information shared during antidumping and countervailing duty investigations. *Id.* at 15-20 (citing, *e.g.*, 19 U.S.C. §§ 1671a(c)(1)(A), 1671b(b)(1), 1671d(a); 1673a(c)(1)(A), 1673b(b)(1), 1673d(a) (providing timelines for initiating an investigation and issuing the preliminary and final determinations); 19 C.F.R. §§ 351.301, 351.309 (providing timelines for submission of factual information and written argument); 19 U.S.C. § 1677f (governing the submission of business proprietary information during antidumping and countervailing duty proceedings); 19 C.F.R. §§ 354.5, 354.17 (implementing

---

absent a finding that jurisdiction pursuant to section 1581(c) would be "manifestly inadequate." *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374–75 (Fed. Cir. 2019).

regulations regarding business proprietary information and the APO).  Plaintiffs do not respond

to this showing, nowhere mentioning *Sunpreme*, *Juancheng Kangtai*, or the detailed statutory

and regulatory schemes that would be disrupted were this case allowed to proceed.

Instead, plaintiffs attempt to distinguish *Shakeproof*, Pl. Opp. at 19-21, in which the

Federal Circuit expressed "'serious doubts'" that waiting until Commerce's final decision on the

antidumping duty proceeding would be "'manifestly inadequate'" to review arguments regarding

"revocation of APO access and disqualification."  Slip Op. at 18 (quoting *Shakeproof Industrial*

*Prods. Div. of Ill. Tool Works Inc. v. United States*, 104 F.3d 1309, 1312-13 (Fed. Cir. 1997)).

Plaintiffs insist that *Shakeproof* is distinguishable because "no conflict-induced taint threatened

the investigation in the interim."  Pl. Opp. at 20 (citing *Shakeproof*, 104 F.3d at 1312-13).  As in

this case, however, the plaintiff in *Shakeproof* did allege such a taint, arguing that another party's

attorney had previously worked for Commerce during a prior related proceeding, during which

time the attorney "had been personally involved" in that proceeding and had "access to

[Shakeproof's] business proprietary information."  *Shakeproof*, 104 F.3d at 1311.

In any event, the Federal Circuit did not premise its jurisdictional doubts on the merits,

which the Court separately addressed in dismissing the case.  *Shakeproof*, 104 F.3d at 1313.

Instead, the jurisdictional analysis in *Shakeproof* rested on doubt that waiting until Commerce's

final decision would be "manifestly inadequate," and reasoning that Shakeproof's

"interlocutory" request "was premature."  *Id.* at 1312-13.  The same reasoning applies here.

Importantly, the reasoning in *Shakeproof* aligns with that in *Firestone*, a Supreme Court

decision that this Court found "persuasive in counseling against interlocutory appeals of attorney

disqualification denials."  Slip Op. at 27-28 (citing *Firestone*, 449 U.S. at 368).  Similar to

*Shakeproof*, the Supreme Court explained that allegations of an "indelible stamp or taint"[2] from the alleged conflict did not justify an interlocutory appeal from the district court, but that such allegations should be raised (if at all) following a final decision on the merits. *Firestone*, 449 U.S. at 376-78. "The decision whether to disqualify an attorney . . . will *rarely, if ever,* represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* at 377 (emphasis added). As this Court explained, if the agency's actions are found to be unreasonable on review after a final decision, the Court may "remand the matter for further investigation as appropriate." Slip Op. at 21 (citing 28 U.S.C. § 1581(c); *Koyo Seiko Co. v. United States*, 13 CIT 461, 464, 715 F. Supp. 1097, 1099 (1989)).

Despite the reasoning in *Shakeprooof* and *Firestone*, plaintiffs object to waiting until after a final decision to challenge attorney disqualification, arguing that no meaningful relief would be available after the conclusion of a trade investigation. Pl. Opp. at 20. Perplexingly, plaintiffs argue that "[a] denial of attorney disqualification does not bear on whether the Department's ultimate dumping determination is 'unsupported by substantial evidence' or is 'otherwise not in accordance with law.'" Pl. Opp. at 21. To the extent plaintiffs thereby concede that their allegations do not implicate the merits of the ongoing antidumping or countervailing duty proceedings, there would be little reason for Commerce to address those allegations, which may instead be resolved by relevant ethics authorities or in a separate proceeding against the Firm. *See* Mot. to Dismiss at 26 (citing *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 37 (D.D.C. 2013)). In any event, the core reasoning in *Firestone* applies: waiting until after final judgment is likely to assist in review because it would allow the Court to evaluate the

---

[2] The "taint" in *Firestone* is the same taint alleged by plaintiffs. *See* Pl. Opp. at 15, 19 (alleging that "the right to a proceeding untainted by the Attorney's conflict will be destroyed if its vindication is postponed until after the agency's final determination").

impact of the disqualification motion "on the underlying litigation." 449 U.S. at 377. If, as claimed by plaintiffs, there is no such impact on the underlying litigation, *see* Pl. Opp. at 20, that may be an important element of the Court's subsequent review pursuant to 28 U.S.C. § 1581(c).

Plaintiffs further argue that the relevant matters in *Firestone* were not "substantially related," citing two cases that, plaintiffs claim, distinguished *Firestone* on this basis. *See* Pl. Opp. at 21-22 (citing *In re Am. Airlines, Inc.*, 972 F.2d 605, 608-09 (5th Cir. 1992); *Unified Sewerage Agency of Wash. Cnty., Or. v. Jelco Inc.*, 646 F.2d 1339, 1344 (1981)). *Firestone*, however, presented an alleged conflict between *current* clients, so it can hardly be said that the stakes were lower than this case involving an allegation by a former client.[3] *See Firestone*, 449 U.S. at 370-71. In any event, far from distinguishing *Firestone*, the presence of such differing "factual situation[s]" in each disqualification motion supports delaying review until after a final decision, when courts may assess the impact of any alleged conflict on the case. *See Firestone*, 449 U.S. at 377. Moreover, the cases cited by plaintiffs, Pl. Opp. at 22 (citing *Am. Airlines*, 972 F.2d at 608-09; *Unified Sewerage*, 646 F.2d at 1344), involved grants of mandamus review, which *Firestone* acknowledged "might" be an option only in "exceptional circumstances." *See Firestone*, 449 U.S. at 378 n.13. As demonstrated in our motion to dismiss and not rebutted in plaintiffs' opposition, plaintiffs are not entitled to the extraordinary remedy of mandamus relief. *See* Mot. to Dismiss at 20-21; *see also* Slip Op. at 30-32 (holding plaintiffs were not entitled to mandamus relief in the ITC case).

Far from assisting plaintiffs, moreover, the *American Airlines* decision acknowledges that the interlocutory review requested by plaintiffs could encourage "tactical" motions to disqualify.

---

[3] *Firestone* arose from a products liability suit, in which defendant Firestone Tire & Rubber Co. and its liability insurer, Home Insurance Co., were adverse to the plaintiffs, whose attorney's law firm also represented Home Insurance. *See Firestone*, 449 U.S. at 370-71.

*Am. Airlines*, 972 F.2d at 611.  As the court explained, "delay" is the "greatest tactical advantage offered by these [interlocutory] motions"—an advantage not available when parties must wait to challenge disqualification decisions until after final judgment.[4]  *Id.*  Plaintiffs are thus wrong, (Pl. Opp. at 23), to dispute the Court's reasonable concern about the possibility of such interlocutory appeals wasting "scarce judicial resources."  Slip Op. at 29-30 (quoting *Firestone*, 449 U.S. at 378).[5]

Finally, plaintiffs are incorrect in arguing that waiting until a final agency decision to review attorney disqualification would cause any "injury" to the legal profession.  *See* Pl. Opp. at 20.  The Federal Circuit has found that "judges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1576–77 (Fed. Cir. 1984), *disapproved on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) (holding disqualification orders are not immediately

---

[4]  In a further effort to distinguish *Firestone*, plaintiffs argue that section 1581(i) jurisdiction is a different standard than the final-judgment rule for jurisdiction in federal appeals. Pl. Opp. at 22.  The problem for plaintiffs, however, is that the reasoning in *Firestone*, echoed in *Shakeproof*, is fatal to their argument that challenging Commerce's final decision pursuant to section 1581(c) would be "manifestly inadequate."

[5]  The remaining cases cited by plaintiffs do not support their interlocutory challenge to a lower tribunal's decision not to disqualify counsel.  *See* Pl. Opp. at 22 (citing *Dynamic 3D Geosolutions LLC v. Schlumberger Ltd. (Schlumberger N.V.)*, 837 F.3d 1280, 1285-87 (Fed. Cir. 2016); *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1461 (Fed. Cir. 1984); *Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600, 602 (Fed. Cir. 1984)).  The most recent case, *Dynamic 3D*, presented an appeal of an attorney disqualification order *after* final judgment.  837 F.3d at 1285.  The other two cases, *EZ Paintr* and *Kearns*, involved collateral appeals of attorney disqualification orders, but were both decided before the Supreme Court foreclosed that avenue for appeal.  *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).  In all three cases, the Federal Circuit affirmed the decision of the lower court, finding there was no clear error or abuse of discretion.  *See Dynamic 3D*, 837 F.3d at 1284-86; *EZ Paintr*, 746 F.2d at 1462; *Kearns*, 745, F.2d at 601.

appealable).  "The opposite effects are just as likely—encouragement of vex{atious} tactics and increased cynicism by the public."  *Id*. at 1577.

B.  Plaintiffs' Conflict-Of-Interest Allegations Do Not Support Section 1581(i) Jurisdiction

The Court carefully parsed *Makita*, the case upon which plaintiffs have primarily relied throughout this litigation.  *See* Slip Op. at 23 n.12 & 25-27.  Plaintiffs now contend that the Court "improperly shifted the burden to the plaintiffs" to identify client confidences and otherwise erred in distinguishing *Makita*.  Pl. Opp. at 2, 15-19.  The Court's analysis, however, is consistent with the reasoning in *Firestone* recognizing that litigants seeking disfavored interlocutory proceedings must provide something more than the general "possibility that the course of the proceedings may be indelibly stamped or shaped with the fruits of a breach of confidence or by acts or omissions prompted by a divided loyalty."  *Firestone*, 449 U.S. at 376.

Contrary to plaintiffs' arguments, the question is not whether the District of Columbia ethics authority, or even this Court, would find a conflict upon *de novo* review, nor whether the Court would, *de novo*, take the "drastic" step of disqualification.  *See Panduit*, 744 F.2d at 1577 (citation omitted).  Plaintiffs nonetheless submit lengthy arguments regarding the type of evidence that may (and may not) be required to prove a conflict.  Pl. Opp. at 15-20 (citing *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016); *Chugach Elec v. U.S. Dist. Ct. Alaska*, 370 F.2d 441, 444 (9th Cir. 1966); *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir. 1973), *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1461 (Fed. Cir. 1984)).  These cases, however, are not dispositive on the relevant issue:  whether plaintiffs have met their heavy burden to demonstrate that waiting until a final decision and pursuing the usual review process would be "manifestly inadequate."  *See, e.g.*, *Sunpreme*, 892 F.3d at 1192; *Juancheng*

*Kangtai*, 932 F.3d at 1327.  In the ITC case, the court correctly held that plaintiffs had not made such a showing, and the same reasoning applies here.  *See* Slip Op. at 30.

Furthermore, with respect to plaintiffs' argument that the Court engaged in improper "burden shifting," Pl. Opp. at 15-20, it is worth noting that the plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (once jurisdictional facts are challenged, "the plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence") (citations omitted).  In the specific context of jurisdiction pursuant to section 1581(i), moreover, the plaintiff "bears the burden" of establishing that, if it "availed itself of the remedy under § 1581(c), that remedy would have been manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987).

Finally, plaintiffs argue that the Court's standard for section 1581(i) is incompatible with *Makita*.  Pl. Opp. at 18.  The Court, however, recognized that *Makita* is not binding authority and did not address any disputes regarding section 1581(i) jurisdiction.  *See* Slip Op. at 23 n.12 & 25-26.  *Makita*, moreover, is simply not persuasive.  In *Makita*, the court erred by engaging in a *de novo* analysis of the conflict-of-interest allegations, divorced from the agency's findings and exercise of discretion, and relying on evidence not submitted to the agency. *See generally*, *Makita*, 819 F. Supp. at 1104-07.  Yet such *de novo* and interlocutory review would have been erroneous even if undertaken by an appellate court reviewing a district court on the same issue. *See Firestone*, 449 U.S. at 377 (foreclosing collateral appeals); *Dynamics 3D*, 837 F.3d at 1284 (reviewing disqualification orders under the "abuse of discretion" standard).  Agencies are entitled to even greater deference when deciding how to regulate practitioners appearing before

them.  *See, e.g., Touche Ross & Co. v. SEC,* 609 F.2d 570, 582 (2d Cir. 1979) (upholding agency

rules regulating attorneys because the rules were "reasonably related" to the statutory scheme

administered by the agency).

      C.        <u>The Alleged APO Violation Does Not Support Section 1581(i) Jurisdiction</u>

In the ITC case, the Court held that plaintiffs had not "satisfied their burden" to

demonstrate that alternative sources of jurisdiction were manifestly inadequate to review the

alleged APO violation.  Slip Op. at 20.  As in the ITC case, plaintiffs raise nothing more than

"threadbare accusations" regarding an alleged APO violation, and have not demonstrated that

alternative sources—namely, jurisdiction pursuant to 28 U.S.C. § 1581(c)—would be manifestly

inadequate.  *See* Pl. Opp. at 10 (alleging only a "potential violation of the Predecessor APO").

For this reason, and because the interlocutory relief requested by plaintiffs would undermine

Congress's carefully crafted administrative scheme, the APO-related claims should be dismissed,

without prejudice to refiling in a future case pursuant to 28 U.S.C. § 1581(c).

In response, plaintiffs argue that **(1)** "19 U.S.C. § 1677f does not imply a lack of

jurisdiction" to review plaintiffs' APO challenge, and **(2)** "*Hyundai Pipe* confirms jurisdiction is

proper."  Pl. Opp. at 24.  Neither of these arguments, however, overcomes the fundamental

failure of plaintiffs to make more than "skeletal" claims about the alleged APO violation and

resulting harm.  *See* Slip Op. at 29-30.  In any event, each of these arguments is incorrect.

Contrary to plaintiffs' argument, the current version of 19 U.S.C. § 1677f *does* imply a

lack of section 1581(i) jurisdiction to challenge the grant of another party's access to business

proprietary information pursuant to the APO.  *See* Mot. to Dismiss at 17-20.  To be sure, the

Court's decision in the ITC case cited several cases in which the Court exercised jurisdiction to

review grants of such access pursuant to section 1581(i).  Slip Op. at 16 & 25 n.13 (citing

*Sacilor, Acieries et Laminoirs de Lorraine v. United States*, 3 CIT 191, 193, 542 F. Supp. 1020,

1023 (1982); *Hyundai Pipe Co. v. U.S. Dep't of Commerce*, 11 CIT 238 (1987); *SNR Roulements*

*v. United States*, 13 CIT 1, 4, 704 F. Supp. 1103, 1107 (1989)).  Each of these cases, however,

has been superseded by statutory amendments that alter the jurisdictional analysis.  *See* Omnibus

Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, 102 Stat. 1107, 1207–08, § 1332

(Aug. 23, 1988), (codified at 19 U.S.C. § 1677f(c), with implementing regulations at 19 C.F.R.

§§ 351.304-306) (generally requiring Commerce to share business proprietary information under

the APO); Customs & Trade Act of 1990, Pub. L. No. 101-382, 104 Stat. 629 § 135 (Aug. 20,

1990) (codified at 19 U.S.C. § 1677f(g), with implementing regulations at 19 C.F.R. § 354.17)

(providing confidential treatment for materials relating to alleged APO violations).  Notably,

although *SNR Roulements* was decided after the 1988 statute was enacted, the statute's delayed

effective date meant that the amendments did not apply.  704 F. Supp. at 1109 (noting that the

1988 Act only applied to subsequent investigations "initiated after August 23, 1988").

    These statutory and regulatory amendments displace the legal schemes at issue in *Sacilor*,

*Hyundai Pipe*, and *SNR Roulements*, and require a different jurisdictional outcome.[6]  For

example, pursuant to the legal scheme in effect at the time of *SNR Roulements*, "Commerce was

charged with weighing 'whether the need of the person requesting the information outweighs the

need of the person submitting it for continued confidential treatment.'"  *SNR Roulements*, 704 F.

Supp. at 1109-10 (citing 19 C.F.R. § 353.30(a)(3) (1988)).  The current statutory scheme, by

---

[6]  Also notable is that the discussion of section 1581(i) jurisdiction in *Sacilor*, for
example, is not consistent with the Federal Circuit's recent rulings strictly enforcing section
1581(i).  Mot. to Dismiss at 20 (citing, e.g., *Erwin*, 930 F.3d at 1370; *Wanxiang Am. Corp. v.
United States*, 12 F.4th 1369 (Fed. Cir. 2021); *Sunpreme*, 892 F.3d at 1186; *ARP Materials, Inc.
v. United States*, 47 F.4th 1370 (Fed. Cir. 2022)).

contrast, *requires* (with certain exceptions not relevant here[7]) that parties subject to the APO

have access to all business proprietary information submitted in the proceeding. 19 U.S.C.

§ 1677f(c) (requiring that Commerce and the Commission "*shall* make all business proprietary

information presented to, or obtained by it, during a proceeding . . . available to interested parties

who are parties to a proceeding under a protective order") (emphasis added); 19 C.F.R.

§ 351.304-306.[8]

    Similarly, *Hyundai Pipe* has been superseded by subsequent statutory amendments. In

enjoining Commerce from disclosing business proprietary information, *Hyundai Pipe* reasoned

that that the statutory scheme authorized only "'limited disclosure of certain confidential

information'" and that "caution must be . . . the guidepost in dealing . . . with sensitive

information." 11 CIT at 241-45. The current statutory scheme, by contrast, generally requires

disclosure to parties subject to the APO. 19 U.S.C. § 1677f(c). It is Congress's judgment that

such disclosure should now be "mandatory." S. Rep. No. 103-412, 86 (1994). Additionally,

subsequent statutory amendments added confidentiality protections to materials relating to

alleged violations of the APO, so the complaining party is not entitled to know the result of any

---

    [7] The limited exceptions include "privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure." *See* 19 U.S.C. § 1677f(c)(1)(A). A later amendment also added that "customer names obtained during any investigation which requires a determination under section [1671d(b) or 1673d(b)] may not be disclosed . . . until either an order is published . . . or the investigation is suspended or terminated." *See* Customs & Trade Act of 1990, Pub. L. No. 101-382, 104 Stat. 629 § 135 (codified at 19 U.S.C. § 1677f(c)(1)(A)). Notably, plaintiffs do not allege that this case presents privileged or classified information, information with a "clear and compelling" need to withhold from disclosure, or client information. *See generally* Compl., ECF No. 5 (Oct. 31, 2022); Am. Compl., ECF No. 36 (Nov. 18, 2022).

    [8] As explained in the Senate Report on the bill, the prior scheme "authorize[d], but [did] not require, Commerce and the ITC to disclose proprietary and nonproprietary information if certain conditions are met," whereas the amendment would "make disclosure *mandatory*." S. Rep. No. 103-412, 86 (1994) (emphasis added); *see also* H. Rep. No. 103-826, 107 (1994).

investigation.  19 U.S.C. § 1677f(g), 19 C.F.R. § 354.17.  Through these statutory amendments, Congress has created a scheme that prioritizes APO access to ensure that interested parties can engage in meaningful comment at the agency level—and a scheme that fundamentally differs from the one at issue in *Hyundai Pipe*.[9]

Importantly, *Shakeproof* addressed allegations similar to *Hyundai Pipe* that a law firm "should be excluded from any APO."  104 F.3d at 1311.  In *Shakeproof*, however, the Court applied the new statutory scheme (as in this case), and expressed "serious doubts" that waiting until Commerce's final decision "would be manifestly inadequate."  *Shakeproof*, 104 F.3.d at 1311, 1313.  Moreover, after finding Commerce did not err in its conflicts analysis, the Court held that "there is no legal basis for objecting" that "the firm's APO application may be granted," *id.* at 1314—presumably in light of the general requirement for APO access pursuant to the amended statutory scheme, *see* 19 U.S.C. § 1677f(c).

Plaintiffs are, thus, incorrect that the status of this case—in which plaintiffs will be required to release BPI without knowing the outcome of any investigation into the alleged APO breach—places them in the same position as the plaintiffs in *Hyundai Pipe*.  *See* Pl. Opp. at 24.  To the contrary, unlike in *Hyundai Pipe*, plaintiffs are subject to a statutory scheme that requires mandatory sharing of such information, and that provides confidentiality protections for the party accused of the APO violation.  *See* 19 U.S.C. §§ 1677f(c), (g); 19 C.F.R. § 354.17.  As in *Shakeproof*, waiting until Commerce's final decision would not be manifestly inadequate.

Finally, it is instructive to consider this new statutory scheme alongside the existing statutory provisions allowing jurisdiction to challenge the denial—but not the grant—of APO

_____

[9]  Given this statutory scheme, it is no surprise that later cases have come out differently. *See, e.g.*, *Papierfabrik Aug. Koehler SE v. United States*, 953 F. Supp. 2d 1348, 1351 (Ct. Int'l Trade 2014) (dismissing arguments regarding access to information).

access.  19 U.S.C. § 1677f(c)(2); 28 U.S.C. § 1581(f).  Importantly, Congress specified that courts exercising such jurisdiction must be careful to avoid "stopping or suspending the investigation."  19 U.S.C. § 1677f(c)(2).  Reading these provisions alongside the 1988 and 1990 amendments demonstrates Congress's preference for seamless and undisrupted agency proceedings.  It is not "manifestly inadequate" for parties to wait until Commerce's final decision before raising challenges to the grant of APO access.  *See* 28 U.S.C. § 1581(c).

In sum, because plaintiffs raise only threadbare allegations of an APO violation, and because allowing an interlocutory challenge would disrupt a carefully crafted statutory scheme, plaintiffs have not satisfied their burden to establish jurisdiction pursuant to 28 U.S.C. § 1581(i).

II.    In The Alternative, Plaintiffs Fail To State A Claim For Relief

In the alternative, the Court should dismiss plaintiffs' claims pursuant to Rule 12(b)(6) because they fail to state a claim that Commerce violated the APA standard of review in declining to immediately disqualify the Firm from the investigation or the APO.

A.    Plaintiffs' Conflict-Of-Interest Allegations Fail To State A Claim

Commerce reasonably exercised its substantial authority in regulating attorney conduct in the course of antidumping and countervailing duty investigations.  Mot. to Dismiss at 22-26.  In attempting to rebut this showing, plaintiffs argue that Commerce "is nonetheless acting contrary to law—specifically, the Rules of Professional Conduct and District of Columbia common law[.]"  Pl. Opp. at 26 (citing 5 U.S.C. § 706(2)(A)).  This is a perplexing argument.  It is well-established (including in cases cited by plaintiffs) that state and local ethics standards are not binding on federal courts, though courts may adopt them as persuasive.  "[W]hether and  how" to apply state ethical standards or American Bar Association rules "are questions of federal law," when regulating attorney conduct in federal court.  *Dynamic 3D*, 837 F.3d at 1284 (Fed. Cir.

2016) (quoting *Am. Airlines*, 972 F.2d at 609-10; *see also United States v. Miller*, 624 F.2d 1198, 1200 (3d Cir. 1980) ("Supervision of the professional conduct of attorneys practicing in federal court is a matter of federal law."). Nor are such local standards binding on federal agencies, which possess discretion to "fashion their own rules of procedure," *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978), to create their own rules of procedure "regarding the development of the agency record," *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760-61 (Fed. Cir. 2012), and to regulate the conduct of practitioners to help the agency "in the discharge of its important duties." *Goldsmith v. U.S. Bd. of Tax Appeals*, 270 U.S. 117, 121 (1926).

Here, Commerce reasonably declined to disqualify the Firm, relying on the preamble to Commerce's regulation on attorney and non-attorney representative conduct. *See* 19 C.F.R. § 351.313; *see also Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773-02, 22,775 (Dep't of Commerce Apr. 17, 2013) (explaining that Commerce generally declines to adjudicate matters of attorney professional responsibility in which the agency is not expert, such as conflicts of interest); *see also Ripe Olives From Spain*, 86 Fed. Reg. 35,068-01 (Dep't of Commerce July 1, 2021) (Final Results of Antidumping Duty Admin. Review 2018-2019, and Issues and Decision Mem. (IDM), 86 ITA DOC 35,068 (June 25, 2021)) (stating that conflicts of interest are "not a matter for Commerce to resolve because Commerce is not an appropriate tribunal for resolving allegations of professional misconduct by DC Bar members"). The proceedings in this Court— including a battle of the experts and hundreds of pages of briefing of a complex conflicts issue— illustrate the reasonableness of Commerce's approach of generally leaving complex and locality-specific conflict-of-interest analysis to local ethics authorities. *See* Mot. to Dismiss at 26.

Plaintiffs argue that *Goldsmith v. U.S. Board of Tax Appeals* demonstrates agency authority to disqualify, which, they claim, Commerce was required to employ in this case. Pl. Opp. at 27 (citing *Goldsmith*, 270 U.S. at 121–23). In *Goldsmith*, the Supreme Court held that an agency that has the authority to set general rules governing hearings before it, also has the power to create and enforce rules limiting who can practice and appear before the agency. *Goldsmith*, 270 U.S. at 121-23; *see also Touche Ross*, 609 F.2d at 578; *Koden v. U.S. Dept. of Justice*, 564 F.2d 228, 233 (7th Cir. 1977).

What plaintiffs misunderstand about the *Goldsmith* line of cases is that they represent not just authority, but also discretion. An agency's decision "whether and how to pursue disciplinary proceedings against those practicing before" it involves "discretionary decisions grounded in policy." *Sicignano v. United States*, 127 F. Supp. 2d 325, 330–32 (D. Conn. 2001). Inherent in an agency's discretion to regulate is the discretion to stay its hand. Both choices merit deference and both must be evaluated in light of the statutory scheme in which the agency operates. *See* Mot. to Dismiss at 25-26 (citing, *e.g.*, *Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1309, 1316 (Ct. Int'l Trade 2020) (quoting *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995)) (emphasizing the focus on Commerce's statutory duties in evaluating the reasonableness of its decisions); *see also Camp v. Herzog*, 104 F. Supp. 134, 136 (D.D.C 1952) (holding that, unlike "judicial courts of general jurisdiction," agency authority to regulate representatives derives from "the legislative authority creating such agency"). Commerce has reasonably elected to regulate attorneys and representatives with an eye to avoiding complex conflicts analyses that could derail its ability to accurately and timely complete antidumping and countervailing duty proceedings. *See* Mot. to Dismiss at 25-26.

Plaintiffs next argue that Commerce has arbitrarily and capriciously "depart[ed]" from prior precedent, Pl. Opp. at 27, relying on a letter from another investigation in which Commerce declined to disqualify counsel, after touching briefly on the merits of the conflicts analysis. *See Silicon Metal from the Republic of Kazakhstan: Representation of Tau-Ken Temir LLP by Squire Patton Boggs*, DOC Inv. No. C-834-811 (Dep't of Commerce Oct. 6, 2020)) (*Silicon Metal*). Contrary to plaintiffs' argument, this letter does not represent "established precedent," Pl. Opp. at 27 (citing *In re Vivant, Inc.*, 14 F.4th 1342, 1352 (Fed. Cir. 2021)), which is instead reflected in the preamble to Commerce's regulation on attorney and non-attorney representative conduct. *See* 19 C.F.R. § 351.313; *Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773-02 (Dep't of Commerce Apr. 17, 2013); *Ripe Olives From Spain*, 86 Fed. Reg. 35,068-01 & IDM at 86 ITA Doc 35,068. In any event, although Commerce could have shortened its analysis in *Silicon Metal* by relying on the regulatory preamble, there is no inconsistency between the result in *Silicon Metal* and the decision here.

Finally, to the extent plaintiffs argue that this Court should engage in *de novo* review of the ethics question, Pl. Opp. at 27-28, they are incorrect. As explained in *Shakeproof*, "the proper judicial role in this case [is] to review Commerce's decision rather than to make a *de novo* determination on the conflict-of-interest question[.]" 104 F.3d at 1314. As in *Shakeproof*, Commerce's "decision should be upheld under the Administrative Procedure Act standard of review," and the case dismissed. *Id.*

B.    Plaintiffs' Allegations Of An APO Violation Fail To State A Claim

Plaintiffs also fail to state a claim for relief with respect to the alleged APO violation. In light of the statutory requirement that Commerce "*shall* make all business proprietary

information" in the proceeding "available to interested parties" under the APO, 19 U.S.C.

§ 1677f(c) (emphasis added), Commerce reasonably declined to exclude the Firm from such

access.  Plaintiffs' contrary argument based on *Hyundai* is unpersuasive, *see* Pl. Opp. at 27-28,

because, as discussed above, *Hyundai* applied a prior, now superseded, statutory scheme.  *See*

Section I.C.

Notably, plaintiffs do not respond to our showing that their due process claims should be

dismissed, thereby abandoning their due process argument.  *See* Mot. to Dismiss at 27-30.

III.    The Amended Complaint Should Be Dismissed

The day after filing a response to our motion to dismiss, plaintiffs filed an amended

complaint that includes significant new factual matter, as well as a lengthy declaration by an

ethics expert.  Am. Compl., ECF No. 36 (Nov. 18, 2022).  This new factual matter does not—

and, pursuant to the APA standard of review, cannot—cure the fundamental deficiencies in the

complaint.

For purposes of APA review, "the administrative record consists of 'all documents and

materials directly or indirectly considered by agency decisionmakers.'"  *In re Section 301 Cases*,

570 F. Supp. 3d 1306, 1348 (Ct. Int'l Trade 2022) (quoting *Ammex, Inc. v. United States*, 23 CIT

549, 555, 62 F. Supp. 2d 1148, 1156 (1999)).  "The obvious corollary to this rule is that materials

that were neither directly nor indirectly considered by agency decisionmakers, even if relevant,

should not be included in the record."  *Id.* (cleaned up).  "[T]he focal point for judicial review

should be the administrative record already in existence, not some new record made initially in

the reviewing court."  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)

(quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  Because the new factual submissions and

ethics opinion were not submitted to Commerce in the first instance, they cannot cure the jurisdictional and substantive deficiencies in the complaint.

To the extent the original complaint has been superseded by the amended complaint, defendants intend to file a renewed motion to dismiss the amended complaint, incorporating by reference all memoranda and briefing on the original motion to dismiss.

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss plaintiffs' complaint because the Court does not possess jurisdiction pursuant to 28 U.S.C. § 1581(i).  The Court should also dismiss plaintiffs' alternative petition for mandamus because the Court does not possess jurisdiction to award mandamus relief.  In the alternative, plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

/s/  Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL

BRISHAILAH BROWN
Attorney
Office of the Chief Counsel for Trade
Enforcement & Compliance
U.S. Department of Commerce

/s/ Emma E. Bond
Emma E. Bond
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Fax: (202) 353-0461
Email: Emma.E.Bond@usdoj.gov

November 23, 2022

*Attorneys for Defendants*

22

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS contains 6,475 words,

according to the word-count function of the word processing system used to prepare this brief.

Dated: November 23, 2022                                  /s/ Emma E. Bond
                                                         Emma E. Bond