**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., and ASF-K DE MEXICO S. DE R.I. DE C.V., | ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| v. | ) ) |
| U.S. DEPARTMENT OF COMMERCE, U.S. SECRETARY OF COMMERCE GINA M. RAIMONDO, in her official capacity, and UNITED STATES, | ) ) ) ) ) |
| Defendants, | )   Court No. 22-00316 ) |
| | ) |
| and | ) ) |
| COALITION OF FREIGHT RAIL PRODUCERS, | ) ) ) |
| | ) |
| Defendant-Intervenor. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney
                                          General

                                          PATRICIA M. MCCARTHY
                                          Director

                                          CLAUDIA BURKE
                                          Assistant Director
OF COUNSEL:                               EMMA E. BOND
                                          Trial Attorney
BRISHAILAH BROWN                          U.S. Department of Justice, Civil Division
Attorney                                  P.O. Box 480, Ben Franklin Station
Office of the Chief Counsel for Trade     Washington, D.C. 20044
Enforcement & Compliance                  Tel: (202) 305-2034
U.S. Department of Commerce               Email: Emma.E.Bond@usdoj.gov

December 9, 2022                          *Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.    As In The International Trade Commission Case, The Court Does Not Possess
        Residual Jurisdiction Pursuant To 28 U.S.C. § 1581(i) .......................................... 2

        A.    Even Considering Their New Allegations, Plaintiffs' Conflict-Of-
                Interest Claim Is Not "Effectively Unreviewable" Absent Immediate
                Appeal ............................................................................................... 3

        B.    Plaintiffs Misunderstand The Scope Of Jurisdiction Pursuant To Section
                1581(c) .............................................................................................. 4

        C.    Plaintiffs' Proposed Substantial Relationship Test Is Unpersuasive ......... 7

        D.    The Court Does Not Possess Jurisdiction To Adjudicate Plaintiffs'
                Arguments Regarding An Alleged APO Violation ................................. 11

        E.    Plaintiffs Have Not Demonstrated Entitlement To Mandamus
                Jurisdiction ....................................................................................... 13

    II.    In The Alternative, The Amended Complaint Should Be Dismissed For Failure
        To State A Claim For Relief ................................................................................ 13

CONCLUSION .............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **Page(s)**

*Amsted Rail Co. v. Int'l Trade Commission*,
    Slip Op. 22-124, 2022 WL 16959404 (Ct. Int'l Trade Nov. 15, 2022) ................................... 1

*Atasi Corp. v. Seagate Technology*,
    847 F.2d 826 (Fed. Cir. 1988) ................................................................................................ 10

*Boston Scientific Corp. v. Johnson & Johnson Inc.*,
    647 F. Supp. 2d 369 (D. Del. 2009) ......................................................................................... 9

*Camp v. Pitts*,
    411 U.S. 138 (1973) ............................................................................................................ 14, 15

*Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*,
    40 F.3d 426 (D.C. Cir. 1994) .................................................................................................. 15

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007) .............................................................................................. 15

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019) ............................................................................................................ 12

*Dynamic 3D Geosolutions LLC v. Schlumberger Ltd. (Schlumberger N.V.)*,
    837 F.3d 1280 (Fed. Cir. 2016) .............................................................................................. 10

*EZ Paintr Corp. v. Padco, Inc.*,
    746 F.2d 1459 (Fed. Cir. 1984) .............................................................................................. 10

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981) ............................................................................................. 3, 4, 6, 10, 11

*Florida Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ................................................................................................................ 14

*Goldsmith v. U.S. Bd. of Tax Appeals*,
    270 U.S. 117 (1926) ................................................................................................................ 14

*Hutchison Quality Furniture, Inc. v. United States*,
    827 F.3d 1355 (Fed. Cir. 2016) ................................................................................................ 6

*In re Shared Memory Graphics LLC*,
    659 F.3d 1336 (Fed. Cir. 2011) ......................................................................................... 7, 8, 9

*In re University of S. Florida Trustees,*
   455 F. App'x 988 (Fed. Cir. 2012) ..................................................................... 9, 10

*JSC Acron v. United States,*
   37 C.I.T. 120, 893 F. Supp. 2d 1337 (2013) ......................................................... 13

*Juancheng Kangtai Chem. Co. v. United States,*
   932 F.3d 1321 (Fed. Cir. 2019) ................................................................................ 5

*Kearns v. Fred Lavery Porsche Audi Co.,*
   745 F.2d 600 (Fed. Cir. 1984) ................................................................................ 10

*Koyo Seiko Co. v. United States,*
   13 CIT 461, 715 F. Supp. 1097 (1989) ..................................................................... 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ................................................................................................ 12

*Makita Corp. v. Unitec States,*
   17 CIT 240, 819 F. Supp. 1099 (1993) ................................................................... 14

*Miller & Co. v. United States,*
   824 F.2d 961 (Fed. Cir. 1987) .................................................................................. 5

*PSC VSMPO-Avisma Corp. v. United States,*
   688 F.3d 751 (Fed. Cir. 2012) ................................................................................ 14

*Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States,*
   104 F.3d 1309 (Fed. Cir. 1997) ..................................................................... 2, 4, 10

*Stupp Corp. v. United States,*
   5 F.4th 1341 (Fed. Cir. 2021) ................................................................................. 16

*Ta Chen Stainless Steel Pipe, Ltd. v. United States,*
   342 F. Supp. 2d 1191 (Ct. Int'l Trade 2004) .......................................................... 15

*Touche Ross & Co. v. SEC,*
   609 F.2d 570 (2d Cir. 1979) ................................................................................... 14

*Weyerhaeuser Co. v. United States Fish and Wildlife Serv.,*
   139 S.Ct. 361 (2018) .............................................................................................. 12

*Wyoming Outdoor Council v. U.S. Forest Serv.,*
   165 F.3d 43 (D.C. Cir. 1999) ................................................................................. 16

**<u>Statutes</u>**

5 U.S.C. § 706 ............................................................................................................ 12

19 U.S.C. § 1516a ......................................................................................................... 5

19 U.S.C. § 1677f .................................................................................................... 11, 12

28 U.S.C. § 1581 .................................................................................................... passim

**<u>Regulations</u>**

19 C.F.R. § 351.313 ..................................................................................................... 15

19 C.F.R. § 354.17 ....................................................................................................... 12

**<u>Other Authorities</u>**

*Regulations Strengthening Accountability of Attorneys and Non-Attorneys Representatives Appearing Before the Department,*
    78 Fed. Reg. 22,773-02 (Dep't of Commerce Apr. 17, 2013) ................................. 16

*Ripe Olives From Spain,*
    86 Fed. Reg. 35,068-01 (Dep't of Commerce July 1, 2021) .................................... 16

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| AMSTED RAIL COMPANY, INC., and ASF-K DE MEXICO S. DE R.I. DE C.V.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE, U.S. SECRETARY OF COMMERCE GINA M. RAIMONDO, in her official capacity, and UNITED STATES,<br><br>Defendants,<br><br>and<br><br>COALITION OF FREIGHT RAIL PRODUCERS,<br><br>Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Court No. 22-00316<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

## INTRODUCTION

After voluminous briefing on the original motion to dismiss, plaintiffs offer few new arguments in support of their amended complaint, mainly arguing that their amended factual allegations offer "specific, concrete examples of the taint."  Pl. Opp. at 26, ECF No. 44 (Dec. 5, 2022).  These new arguments fail to overcome the authority demonstrating that 28 U.S.C. § 1581(c)—the usual process for reviewing preliminary procedural decisions in antidumping and countervailing duty proceedings—is not "manifestly inadequate" to review plaintiffs' claims. *See Amsted Rail Co. v. Int'l Trade Commission (ITC)*, Slip Op. 22-124, 2022 WL 16959404 (Ct. Int'l Trade Nov. 15, 2022) (Slip Op.).  Accordingly, residual jurisdiction does not exist pursuant

to 28 U.S.C. § 1581(i), and plaintiffs must wait until after Commerce's final determination to raise any remaining challenges in this Court.

In the alternative, plaintiffs fail to state a claim for relief pursuant to Rule 12(b)(6). Plaintiffs concede that their newly submitted facts may not be considered on the merits.  Pl. Opp., ECF No. 44, at 39-40 (stating that "{t}he new factual matters" are offered to "establish{} the Court's jurisdiction," and not the merits).  Instead, plaintiffs' arguments center around the erroneous assumption that it is the Court's role to dictate how Commerce should fashion its procedures—including procedures relating to attorney regulation and access to business proprietary information under Commerce's administrative protective order (APO).  Pl. Opp., ECF No. 44, at 34-36.  That core premise, however, is squarely contradicted by the Administrative Procedure Act (APA) standard of review applicable pursuant to 28 U.S.C. § 1581(i).  *See Shakeproof Indus. Prods. Div. of Ill. Tool Works, Inc. v. United States*, 104 F.3d 1309, 1314 (Fed. Cir. 1997).  Here, Commerce has reasonably deferred to expert ethics authorities when it comes to high-stakes conflict-of-interest allegations, thus enabling Commerce to maintain its focus on the statutory priority of accurate and time-sensitive antidumping and countervailing duty determinations.  As to the alleged APO violation, Commerce has reasonably implemented the statutory and regulatory scheme.  Accordingly, the amended complaint should be dismissed for failure to state a claim.

# ARGUMENT

I.   As In The ITC Case, The Court Does Not Possess Residual Jurisdiction Pursuant To
     28 U.S.C. § 1581(i)

Most of plaintiffs' arguments simply repeat their opposition to the original motion to dismiss, and are already addressed in our earlier reply.[1]  Plaintiffs' new arguments center on **(1)** the new factual matter contained in the amended complaint, **(2)** claims regarding the scope of 28 U.S.C. § 1581(c), **(3)** a novel jurisdictional argument regarding the "substantial relationship" element of conflicts analysis, **(4)** the statutory scheme governing APO access, and **(5)** mandamus relief.  None of these arguments, however, shows that it would be "manifestly inadequate" for plaintiffs to wait until Commerce's final determination before seeking judicial review.  As in the nearly identical ITC case, the Court should, thus, dismiss the case because it does not possess jurisdiction pursuant to 28 U.S.C. § 1581(i).

1.   Even Considering Their New Allegations, Plaintiffs' Conflict-Of-Interest Claim
     Is Not "Effectively Unreviewable" Absent Immediate Appeal

The new factual matter (Pl. Opp., ECF No. 44, at 23-24), cannot cure the jurisdictional defects in the amended complaint because it does not offer a "concrete example" of how the alleged conflict would be unreviewable after the final decision.  *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376 (1981).  In *Firestone*, the petitioner sought interlocutory appeal on the ground that, absent immediate appeal, its opponent would rely on the "fruits of a breach of confidence" to "shape the . . . claims for relief in such a way as to increase the burden on petitioner."  *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376 (1981).  The Court held

---

[1]  *Compare* Pl. Opp., ECF No. 44, at 15-23 (addressing the Court's analysis regarding *Makita*), *with* Reply, ECF 37, at 10-12 (responding to same); *compare* Pl. Opp., ECF No. 44, at 25-29 (addressing the weight of authority relied upon by the Court in the ITC case) *with* Reply, ECF. No. 37, at 4-10 (responding to same); Pl. Opp., ECF No. 44, at 29-31 (arguing for jurisdiction to entertain plaintiffs' APO access claim); *with* Reply at 12-16 (responding to same).

that "much more" was required "before a ruling may be considered 'effectively unreviewable' absent immediate appeal." *Id.* Here, although plaintiffs have offered additional facts purporting to show "fruits of a breach of confidence," they have wholly failed to demonstrate the critical element: "concrete" reasons why those "fruits" would render the conflict allegations unreviewable absent immediate appeal. *See Firestone*, 449 U.S. at 376.

For example, plaintiffs characterize their new allegations as "specific, non-exhaustive examples of shared confidences the Attorney and Coalition have used or could use against Plaintiffs in the Current Investigations," including "specific categories of confidential information shared with the Attorney that he would not otherwise have learned through APO-covered material." Pl. Opp., ECF No. 44, at 23. Applying the *Firestone* analysis, however, these allegations relate only to the plaintiffs' argument that there may be "fruits of a breach of confidence." *Firestone*, 449 U.S. at 376. None of these allegations demonstrate that the conflict-of-interest allegations would be "effectively unreviewable" absent immediate appeal.

Nor is that surprising. The *Firestone* Court indicated that such disqualification denials would "rarely, if ever" prove to be unreviewable after the final decision. *Firestone*, 449 U.S. at 377. "The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation . . . , and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* Similarly, in *Shakeproof*, the Court reasoned that the "interlocutory" challenge to Commerce's disqualification was "premature," despite allegations of ill-gotten confidential information. *Shakeproof*, 104 F.3d at 1312-13. As in *Firestone* and *Shakeproof*, plaintiffs' new allegations regarding shared confidences do not rebut the conclusion that their challenge is "premature," and such allegations should be raised, if at all, after Commerce's "final

decision." *See id.* (expressing "serious doubts" that waiting until Commerce's final decision would be "manifestly inadequate").

      2.    <u>Plaintiffs Misunderstand The Scope Of Jurisdiction Pursuant To Section 1581(c)</u>

Perhaps recognizing that their new factual allegations do not reach the ultimate question—the manifest inadequacy of 28 U.S.C. § 1581(c)—plaintiffs undertake a cramped analysis of section 1581(c) in an attempt to show that it does not provide "an adequate remedy." Pl. Opp., ECF No. 44, at 24-25.  Narrowly parsing section 1581(c), plaintiffs claim that "{a} denial of attorney disqualification does not bear on whether the Department's dumping determination is 'unsupported by substantial evidence' or is 'otherwise not in accordance with law.'"  Pl. Opp., ECF No. 44, at 25.  Confusingly, plaintiffs contradict themselves by arguing elsewhere that the conflict-of-interest issue *does* implicate the final dumping margin, claiming that the "confidential information" allegedly learned during the prior representation is not "irrelevant" to Commerce's "dumping margin calculation."  Pl. Opp., ECF No. 44, at 24.

In any event, to the extent plaintiffs contend that preliminary procedural matters—such as motions to disqualify counsel from the proceeding or the APO—are not reviewable pursuant to section 1581(c), they are incorrect.  "Under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a," both the merits and "*the procedural correctness*" of the underlying countervailing or antidumping duty determination "are subject to judicial review."  *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) (emphasis added).  Indeed, the Federal Circuit recently rejected an assertion of section 1581(i) jurisdiction over a procedural issue, when the plaintiff could have raised that issue pursuant to section 1581(c).  *Juancheng Kangtai Chem. Co. v. United States*, 932 F.3d 1321, 1327–28 (Fed. Cir. 2019).  Echoing plaintiffs in this case, the plaintiff in *Juancheng Kangtai* argued that the procedural question at issue—whether relevant entries were properly

considered as part of the ninth or tenth administrative review of the antidumping duty order—could not have been raised pursuant to section 1581(c), because it would not implicate the outcome of the dumping determination. *Id.* The plaintiff in *Juancheng Kangtai* claimed that it "already received a zero percent margin in the AR 9 Final Results, meaning 'there was nothing to appeal' there," and that "filing a § 1581(c) action challenging the AR 10 Final Results 'would not save its eighteen entries at issue from being liquidated at the China-wide rate.'" *Id.* (citation omitted and cleaned up). The Federal Circuit squarely rejected that cramped interpretation, holding that "Kangtai could have sought relief under § 1581(c){.}" *Id.* Because "a remedy under § 1581(c)" would not have been "'an exercise in futility' and therefore manifestly inadequate," the Court held that this Court "lacked § 1581(i) jurisdiction" in the case. *Id.* at 1330 (quoting *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1362 (Fed. Cir. 2016)). The same analysis applies here.

Plaintiffs nonetheless claim that their conflict-of-interest arguments are "collateral" to the dumping determination. Pl. Opp., ECF No. 44, at 25. This argument flies in the face of *Firestone*, which rejected the argument that disqualification denial orders are collateral orders subject to immediate appeal. *See Firestone*, 449 U.S. at 374-75. To the contrary, "the propriety" of such an order "will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only *after final judgment*." *Id.* at 377 (emphasis added).

Relatedly, plaintiffs contend that *Firestone* is inapplicable because vacating a court's judgment (a remedy discussed in *Firestone*) is "an altogether different animal" than vacating an agency's dumping determination. Pl. Opp., ECF No. 44, at 27. To the extent plaintiffs thereby question the effectiveness of relief pursuant to 28 U.S.C. § 1581(c), they find no support in the law. This Court possesses authority to fashion appropriate relief following final decisions in

antidumping and countervailing duty cases.  As this Court explained in the ITC case, "{u}nder §

1581(c), if the court finds {the agency's} actions to be unreasonable, it may remand the matter

for further investigation as appropriate."  Slip Op. at 21.  "And 'if after remand the court

determines that the agency determination was tainted by an improper predisposition, the court

can again remand for reconsideration.'"  *Id.* (quoting *Koyo Seiko Co. v. United States*, 13 CIT

461, 464, 715 F. Supp. 1097, 1099 (1989)).  In sum, because section 1581(c) allows for review

of preliminary procedural issues, plaintiffs cannot demonstrate that it is "manifestly inadequate"

to review their claims.

      3.    <u>Plaintiffs' Proposed Substantial Relationship Test Is Unpersuasive</u>

Plaintiffs attempt to manufacture a rule allowing immediate appeal of disqualification

denials whenever there is a "substantial relationship" between the two matters at issue.[2]  *See,*

*e.g.*, Pl. Opp., ECF No. 44, at 17-18, 26.  According to plaintiffs, "{t}hat the Current

Investigations are substantially related to the Predecessor Investigations suffices, by itself, to

demonstrate the manifest inadequacy of Plaintiffs' remedies."  *Id.* at 17.  This novel theory is

unpersuasive.  The question of whether matters are "substantially related" may be relevant in

evaluating whether there is a conflict of interest between an attorney and a former client.  *See,*

*e.g.*, American Bar Association (ABA) Model Rule 1.9.  But it does not provide a categorical

basis for finding a violation of applicable conflict-of-interest rules, disqualifying counsel, or, on

the ultimate question, justifying immediate appeal of disqualification denial orders.

---

[2]  At this stage, the Government defendants do not concede that the prior investigation is substantially related to the current investigation, but, as discussed below, plaintiffs have not demonstrated jurisdiction pursuant to 28 U.S.C. § 1581(i) even assuming that the matters are substantially related.

At the risk of stating the obvious, the substantial relationship element does not automatically establish a violation of conflict-of-interest rules. A Federal Circuit decision cited by plaintiffs demonstrates the point. Pl. Opp., ECF No. 44, at 32 (citing *In re Shared Memory Graphics LLC*, 659 F.3d 1336 (Fed. Cir. 2011)). In *Shared Memory Graphics*, the Federal Circuit vacated an erroneous disqualification order arising from substantially related patent cases about "the 'Hollywood chip,' a complex memory chip composed of multiple components." *Id.* at 1338. Although the attorney at issue had allegedly obtained confidential information from a substantially related proceeding, the Court determined that Nintendo, the complaining party, "waived this potential conflict." *Id.* at 1342. The factual history leading to this conclusion is strikingly similar to the allegations in this case:

1. The parties exchanged confidential information during a period of cooperation in the first proceeding. *Compare id.* at 1338 (explaining that Nintendo exchanged information with another defendant regarding "litigation tactics and settlement strategies" and "other confidential information) *with* Am. Compl., ECF No. 35, at ¶¶ 15-16, 21-23 (describing cooperation between Amsted and another coalition member in filing the original petition).

2. The parties executed an advance conflicts waiver. *Compare Shared Memory Graphics*, 659 F.3d at 1338-39 (advance conflicts waiver stating that "nothing in this Agreement . . . shall be used as a basis to seek to disqualify the respective counsel of such party in any future litigation") *with* Am. Compl., ECF No. 35, at ¶ 19 (advance conflicts waiver stating that Amsted "will not seek disqualification of Wiley Rein in regard to, or on the basis of, any antidumping, countervailing duty, or other trade remedy investigation").

3. Counsel then joined a new law firm, which later became adverse to the complaining party in a substantially related matter. *Compare Shared Memory Graphics*, 659 F.3d at 1338 (counsel joined a new firm, which then sued Nintendo for infringement involving the same "Hollywood chip" technology at issue in the first litigation), *with* Am. Compl., ECF No. 35, at ¶ 14, 41, 87 (alleging the Attorney changed law firms and that the current investigations are substantially related to the prior investigation).[3]

In *Shared Memory Graphics*, the district court granted Nintendo's motion to disqualify the entire law firm, applying "a conclusive presumption that {the former attorney} had accessed Nintendo's confidential information." *Shared Memory Graphics*, 659 F.3d at 1338. The Federal Circuit vacated, finding clear legal error. Notably, the Court rejected the argument (also made by plaintiffs in this case) that an advance conflicts waiver does not cover a lawyer who subsequently leaves the firm to join another.[4] Instead, the Federal Circuit explained that "Nintendo agreed not to seek disqualification of then 'respective counsel of each party{.}'" *Id.* at 1341.

In sum, not only does *Shared Memory Graphics* undermine plaintiffs' arguments on the merits of their conflicts claim, but it also makes clear that the issue of whether two matters are

---

[3] *Shared Memory Graphics* involved "a non-attorney-client relationship," but specifically acknowledged that, "even in attorney-client situations, general rules of professional legal conduct recognize that in certain circumstances it is not only proper beneficial for parties to contractually consent to a waiver of future conflicts of interest." 659 F.3d at 1338, 1341.

[4] *See Shared Memory Graphics*, 659 F.3d at 1339, 1341-42 (rejecting the district court's reasoning that the advance conflicts waiver "did not pertain to an attorney . . . who subsequently left" the prior firm "and joined another company or firm") *with* Am. Compl., ECF No. 35, at ¶ 65 (arguing that "the advance waiver applies only to Wiley itself," not the Attorney).

"substantially related" is merely an element of the conflicts analysis, not a categorical right to relief.[5]

Further, the existence of a conflict does not necessarily require disqualification, which instead is within the lower tribunal's discretion.  Indeed, in two other cases cited by plaintiffs, the court found a violation of the relevant conflict-of-interest rules, yet declined to disqualify. Pl. Opp., ECF No. 44, at 18, 20, 21, 31, 32 (citing *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374 (D. Del. 2009); *In re University of S. Florida Trustees*, 455 F. App'x 988 (Fed. Cir. 2012)).  In *Boston Scientific Corp.*, for example, the court determined that the attorney's "representation of plaintiffs in the instant suits violates Model Rule 1.7," but denied the motion to disqualify.  647 F. Supp. 2d at 374.  In *University of South Florida Trustees*, likewise, the district court declined to disqualify an attorney, even though the attorney "was prohibited from representing" a party "because of its concurrent conflict of interest."  *In re Univ. of S. Fla. Bd. of Trustees*, 455 F. App'x 988, 990–92 (Fed. Cir. 2012).  The Federal Circuit found no abuse of discretion, affirming the trial court's determination that disqualification would cause "potential prejudice" to the clients, "delay to the proceedings, and the harm to the administration of justice."  *Id.* (stating that "in the Eastern District of Pennsylvania, even if a court finds that counsel has violated the Pennsylvania Rules of Professional Conduct, disqualification is not mandatory, *but within the sound discretion of the district court*") (emphasis added).

---

[5] Although the Federal Circuit exercised jurisdiction to review the disqualification order in *Shared Memory Graphics*, the Court acted pursuant to its mandamus jurisdiction to correct a "clear abuse of discretion or usurpation of judicial power" when the right to writ was "clear and indisputable."  *Shared Memory Graphics*, 659 F.3d at 1339, 1342.  The Court did not exercise jurisdiction because of any purported "substantial relationship" theory of jurisdiction, as advocated by plaintiffs.

The remaining Federal Circuit cases cited by plaintiffs are consistent with the theme of discretion, not with plaintiffs' extreme categorical rule.  Pl. Opp., ECF No. 44, at 18 (citing *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1461 (Fed. Cir. 1984); *Dynamic 3D Geosolutions LLC v. Schlumberger Ltd. (Schlumberger N.V.)*, 837 F.3d 1280, 1287 (Fed. Cir. 2016); *Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 829-30 (Fed. Cir. 1988); *Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600, 603 (Fed. Cir. 1984)).  Each of these cases affirmed a lower court's disqualification order, concluding that there was no abuse of discretion, clear error, or legal error.  *See* Reply at 9 n.5.

The jurisdictional rule proposed by plaintiffs—which would extend this Court's residual jurisdiction whenever there is a "substantial relationship" between two matters in a conflicts analysis—thus breaks down upon the most cursory review.  Given that such a substantial relationship does not automatically violate conflict-of-interest rules or require disqualification, there is no basis for suggesting that it renders the usual review process "manifestly inadequate."  Nor does anything in *Firestone* or *Shakeproof* suggest as much.  To the contrary, the analysis in both cases rested on non-merits issues relating to the interlocutory posture and the availability of the usual review process after a final decision.  *Firestone*, 449 U.S. at 378; *Shakeproof*, 104 F.3d at 1311, 1313.  Accordingly, the Court should reject plaintiffs' effort to seek jurisdiction based solely on the purported substantial relationship between the prior and current Commerce investigations.

4.    The Court Does Not Possess Jurisdiction To Adjudicate Plaintiffs' Arguments Regarding An Alleged APO Violation

Plaintiffs do not respond to the concern that, as in the ITC case, their "threadbare" allegations of an APO violation fail to meet their burden to show that review following final decision would be "manifestly inadequate."  *See* Slip Op. at 27.  Instead, they resist the clear

11

import of the statutory scheme.  Pl. Opp., ECF No. 44, at 30-31.  Conceding that Commerce and other parties to the proceeding are required to share confidential information with parties subject to the APO, and that no exceptions to that rule apply here, plaintiffs nonetheless claim that Commerce was required to immediately disqualify the Attorney and the Firm from the APO.  *Id.* Not only does this argument give no consideration to the interests of the Attorney and the Firm, but it misunderstands the statutory scheme.

Pursuant to 19 U.S.C. § 1677f, plaintiffs fail to demonstrate any entitlement to second-guess Commerce's administration of its APO.  Congress delegated authority for Commerce to administer its APO with "such requirements" as Commerce "may determine by regulation to be appropriate."  19 U.S.C. § 1677f(c)(1)(B).  Congress further delegated authority for Commerce to "provide by regulation for such sanctions" as it "determine{s} to be appropriate{.}"  Even assuming that this broad delegation provides any "meaningful standard by which to judge" Commerce's exercise of discretion[6], plaintiffs have not shown that they fall within the "zone of interests protected by the law invoked."  *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129 (2014) (citation omitted).  Instead, the statutory scheme protects Commerce's authority to regulate the integrity of its own APO.  *See* 19 U.S.C. § 1677f(c)(1)(B).  To the extent the statute provides any procedural protections, they extend only to APO applicants.  For example, Congress provided a series of standards governing the time in which Commerce must consider applications for APO access, procedural appeal rights for APO applicants in the event of denial, and confidentiality protections for APO applicants accused of an APO violation.  19

---

[6]  Delegations of authority that provide "no meaningful standard against which to judge the agency's exercise of discretion" are "committed to agency discretion" by law. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019) (quoting *Weyerhaeuser Co. v. United States Fish and Wildlife Serv*., 139 S. Ct. 361, 370 (2018)); *see also* 5 U.S.C. § 706(2)(A).

U.S.C. § 1677f(c)(1)(C)-(E), (g).  Commerce has implemented the latter authority by making

proceedings regarding APO violations confidential.  19 C.F.R. § 354.17.  This statutory and

regulatory scheme provides procedural rights to APO applicants, not to third parties, who are

not entitled even to know the outcome of alleged APO violations.

To the extent plaintiffs nonetheless claim to have a cognizable interest protected by

statute or regulation, they have not demonstrated that it would be manifestly inadequate to wait

until Commerce's final decision to raise it.  For example, plaintiffs rely on the statutory

requirement that Commerce shall decide whether to grant APO access within 14 days of a

request.  Pl. Opp., ECF No. 44, at 30-31.  But this provision—requiring tight timelines for

determining whether to grant APO access and providing for interlocutory review in this Court in

the event of a denial, 19 U.S.C. § 1677f(c)(1)-(2)— undermines any claim that Congress *sub

silentio* intended similar interlocutory review for the grant of APO access.  *See* 19 U.S.C.

§ 1677f(c)(2).  In any event, by raising only skeletal concerns about a potential APO violation,

plaintiffs have failed, under any standard, to satisfy their burden to demonstrate that it would be

"manifestly inadequate" to wait until Commerce's final decision.

5.    Plaintiffs Have Not Demonstrated Entitlement to Mandamus Jurisdiction

Despite failing to address mandamus relief in their prior response to the original motion

to dismiss, plaintiffs now attempt to resurrect that argument.  Pl. Opp., ECF No. 44, at 31-33.  In

the ITC case, however, the Court correctly determined that mandamus jurisdiction was not

available on materially identical facts.  Slip Op. at 32.  The same reasoning applies here.

"Because Plaintiffs may adequately obtain relief through a potential suit challenging

{Commerce's} injury determination under § 1581(c) . . . , relief cannot lie in mandamus."  *Id.*

As discussed in prior filings and below, moreover, plaintiffs' claims are facially insufficient on

the merits, and, thus, wholly fail to establish a clear entitlement to the writ.  *See* Mot. to

Dismiss, ECF No. 25-2, at 21-22.

II.     In The Alternative, The Amended Complaint Should Be Dismissed For Failure To State
        A Claim For Relief

        In the alternative, plaintiffs fail to state a claim for relief pursuant to the correct APA

standard of review, for the same reasons discussed in prior filings.  *See* Mot. to Dismiss, ECF

No. 25-2, at 22-30; Reply, ECF No. 37, at 16-20.  The amended complaint does not change this

analysis.  Plaintiffs concede that the new factual allegations are outside of the administrative

record, and, according to plaintiffs, are submitted only to "establish{} the Court's jurisdiction,"

not for consideration on the merits.  Pl. Opp., ECF No. 44, at 39 (citing, *e.g.*, *JSC Acron v.

United States*, 37 C.I.T. 120, 893 F. Supp. 2d 1337, 1344 n.7 (2013)).  Indeed, "the focal point

for judicial review should be the administrative record already in existence, not some new record

made initially in the reviewing court."  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-

44 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

        In arguing against dismissal pursuant to Rule 12(b)(6), plaintiffs resist basic principles of

APA review, likely recognizing that these principles are fatal to their claims.  Plaintiffs claim, for

example, that asking whether Commerce acted reasonably in applying its own regulation and

regulatory guidance "examines the problem from the wrong perspective."  Pl. Opp., ECF No. 44,

at 34.  Relying on *Makita* and the fact that the Attorney "is a member" of this Court's bar,

plaintiffs claim that the Court should step in to set its own standards for regulating attorney

conduct before the agency.  *Id.* at 34 (citing *Makita*, 819 F. Supp. at 819).   In the ITC decision,

however, this Court distinguished between "the court's powers to remedy violations of

professional ethics" in litigation before the Court, as opposed to alleged violations "before an

agency."  Slip Op. at 30 n.17 (stating the Court "expresses no view" whether the inherent

authority to regulate its own bar extends to regulating agency procedures).  The case law is clear

that the two authorities are different, and that, when it comes to reviewing an agency's oversight

of representatives appearing before it, the question is whether the agency has acted "reasonably,"

not whether the Court would make a different policy judgment acting *de novo*. *Touche Ross &

Co. v. SEC,* 609 F.2d 570, 582 (2d Cir. 1979); *Goldsmith v. U.S. Bd. of Tax Appeals*, 270 U.S.

117, 121 (1926); *see also PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760-61

(Fed. Cir. 2012) (holding Commerce has the discretion to create its own rules of procedure

"regarding the development of the agency record").  Because plaintiffs have failed to plausibly

allege that Commerce acted unreasonably, its claims must be dismissed.[7]

        To the extent plaintiffs further suggest that they are not required to exhaust agency

procedures, or to submit information to the agency in the first instance, they are incorrect.  *See*

Pl. Opp., ECF No. 44, at 39-40.  Despite conceding that they are not submitting the new

information for consideration on the merits, plaintiffs suggest they should be able to do so

because submitting it to Commerce would have been "futile."  *Id.*  But "{t}he mere fact that an

adverse decision may have been likely does not excuse a party from a statutory or regulatory

requirement that it exhaust administrative remedies."  *Corus Staal BV v. United States*, 502 F.3d

1370, 1379 (Fed. Cir. 2007) (quoting *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.,* 40 F.3d

426, 432–33 (D.C. Cir. 1994)); *see also* 28 U.S.C. § 2637(d).  "Moreover, . . . the Court of

International Trade generally takes a 'strict view' of the requirement that parties exhaust their

administrative remedies before the Department of Commerce in trade cases."  *Id.* (quoting, *e.g.*,

---

        [7]  Contrary to plaintiffs' arguments, moreover, the fact that Commerce applied a different
analysis than plaintiffs advocated does not mean that there were "inadequate factfinding
procedures in an agency adjudicatory proceeding."  *See* Pl. Opp., ECF No. 44, at 40 (quoting
*Camp v. Pitts*, 411 U.S. 138 (1973)).

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 342 F. Supp. 2d 1191, 1205 (Ct. Int'l Trade 2004)).  Applying this rigorous standard, plaintiffs fall far short of demonstrating that they should be excused from exhausting administrative remedies.

Plaintiffs further repeat their arguments that Commerce has departed from its established precedent.  Pl. Opp., ECF No. 44, at 35.  Despite their own reliance on an interim memorandum in an isolated proceeding, plaintiffs claim that the regulatory preamble to 19 C.F.R. § 351.313 "is hardly 'established precedent.'"  *Id.* (citing *Silicon Metal from the Republic of Kazakhstan: Representation of Tau-Ken Temir LLP by Squire Patton Boggs*, DOC Inv. No. C-834-811 (Oct. 6, 2020)).  Unlike the sole decision cited by plaintiffs, however, the regulatory preamble reflects the considered judgment of the agency on this topic.  *See Regulation Strengthening Accountability of Attorneys and Non-Attorney Representatives Appearing Before the Department*, 78 Fed. Reg. 22,773-02, 22,775 (Dep't of Commerce Apr. 17, 2013); *see also Ripe Olives From Spain*, 86 Fed. Reg. 35,068-01 (Dep't of Commerce July 1, 2021) (Final Results of Antidumping Duty Admin. Review 2018-2019, and Issues and Decision Mem. (IDM), 86 ITA DOC 35,068 (June 25, 2021)).  Indeed, although "language in the preamble of a regulation is not controlling over the language of the regulation itself, {courts} have often recognized that the preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules."  *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) (citations omitted).

To the extent plaintiffs argue that the isolated example in *Silicon Metal from Kazakhstan* undermines Commerce's ability to rely on its preamble, it is incorrect.  "Short of a showing that Commerce's enforcement of its procedural rules is so haphazard or unreasonable as to be arbitrary or capricious"—which plaintiffs certainly have not demonstrated here—"Commerce's

failure to apply those rules with Procrustean consistency in every case does not deprive it of the authority to enforce those rules in any case." *Stupp Corp. v. United States*, 5 F.4th 1341, 1350-51 (Fed. Cir. 2021).

Finally, plaintiffs have failed to rebut our showing that they have no protected due process interests that support their claims. *See* Mot. to Dismiss, ECF No. 35, at 28-30. Plaintiffs again fail to address these arguments, instead arguing obliquely that "the APA and due process claims share common underpinnings." Pl. Op. at 38-39. Because plaintiffs have not stated a claim for any due process violation, their due process claim in the Amended Complaint should be dismissed.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss plaintiffs' complaint because the Court does not possess jurisdiction pursuant to 28 U.S.C. § 1581(i). The Court should also dismiss plaintiffs' alternative petition for mandamus because the Court does not possess jurisdiction to award mandamus relief. In the alternative, plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

/s/  Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL                              /s/ Emma E. Bond
                                        Emma E. Bond
BRISHAILAH BROWN                        Trial Attorney
Attorney                                U.S. Department of Justice
Office of the Chief Counsel for Trade   Civil Division
Enforcement & Compliance                P.O. Box 480, Ben Franklin Station
U.S. Department of Commerce             Washington, D.C. 20044
                                        Tel: (202) 305-2034
                                        Fax: (202) 353-0461
                                        Email: Emma.E.Bond@usdoj.gov

December 9, 2022                        *Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED

COMPLAINT contains 4,978 words, according to the word-count function of the word

processing system used to prepare this brief.


Dated: December 9, 2022                         /s/ Emma E. Bond
                                                Emma E. Bond